1  JOSEPH W. COTCHETT (36324)
   STEVEN N. WILLIAMS (175489)
2  NANCY L. FINEMAN (124870)
   NEIL SWARTZBERG (215133)
3  ARON K. LIANG (228936)
   **COTCHETT, PITRE & MCCARTHY**
4  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
5  Burlingame, CA 94010
   Telephone:     (650) 697-6000
6  Facsimile:      (650) 697-0577
   jcotchett@cpmlegal.com
7  swilliams@cpmlegal.com

8  FRANCIS O. SCARPULLA (41059)
   CRAIG C. CORBITT (83251)
9  CHRISTOPHER T. MICHELETTI (136446)
   JUDITH A. ZAHID (215418)
10 QIANWEI FU (242669)
   **ZELLE HOFMANN VOELBEL & MASON LLP**
11 44 Montgomery Street, Suite 3400
   San Francisco, CA 94104
12 Telephone:     (415) 693-0700
   Facsimile:      (415) 693-0770
13 fscarpulla@zelle.com
   ccorbitt@zelle.com
14
15 *Interim Lead Counsel for Indirect-Purchaser Class*
   [Additional counsel listed on signature page]

16

17               **UNITED STATES DISTRICT COURT**

18             **NORTHERN DISTRICT OF CALIFORNIA**

19                    **OAKLAND DIVISION**

20 IN RE FLASH MEMORY ANTITRUST          Master File No. C-07-00086-SBA
   LITIGATION
21

22                                        **INDIRECT-PURCHASER PLAINTIFFS'**
                                          **FIRST AMENDED CONSOLIDATED**
23 This Document Relates to:              **CLASS ACTION COMPLAINT**

24 All Indirect-Purchaser Actions         **DEMAND FOR JURY TRIAL**

25

26

27

28
   _____

1

I.      INTRODUCTION          ………………………………………… ...............1

2   II.     JURISDICTION AND VENUE ...................................................................2

3   III.    DEFINITIONS          ................................................................................4

4   IV.     THE PARTIES          ................................................................................5

5       The Plaintiffs ...............................................................................................5

6       The Defendants...........................................................................................8

7       Co-Conspirators..........................................................................................11

8   V.      NATURE OF TRADE AND COMMERCE ...............................................111

9       Background of Flash Memory .....................................................................11

10      The Size and Structure of the Market for NAND Flash Memory ...................17

11  VI.     VIOLATIONS ALLEGED     ..................................................................20

12      Defendants' Access to Exchange Pricing....................................................20

13      Cross-Licensing and Cross-Purchasing Agreements..................................24

14      Communications Among Defendants..........................................................28

15  VII.    THE DEPARTMENT OF JUSTICE INVESTIGATION ................................35

16  VIII.   THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS.....................38

17  IX.     CLASS ACTION ALLEGATIONS .............................................................42

18  X.      FRAUDULENT CONCEALMENT ............................................................53

19  XI.     VIOLATIONS ALLEGED     ..................................................................54

20      First Claim for Relief (Violation of Section 1 of the Sherman Act) ................54

21      Second Claim for Relief (Unjust Enrichment and Disgorgement of Profits)....56

22      Third Claim for Relief (Violation of State Antitrust and Unfair Competition
23          Laws) ....................................................................................................57

24      Fourth Claim for Relief (Violation of State Consumer Protection and Unfair
25          Competition Laws) ................................................................................70

26

27

28

XII.    PRAYER FOR RELIEF    .............................................................................85

XIII.    JURY TRIAL DEMAND    ...................................................................95

1        Plaintiffs, indirect-purchasers of NAND Flash Memory as defined below, on

2  behalf of themselves and all other similarly-situated indirect-purchasers, for their

3  Consolidated Class Action Complaint against all Defendants named herein, demand trial by

4  jury of all claims properly triable thereby, and complain and allege as follows:

5               **I.**     **INTRODUCTION**

6      1.     This case arises out of a long-running conspiracy extending from at least

7  January 1, 1999 until the present ("the Class Period"), among Defendants and their co-

8  conspirators, with the purpose and effect of fixing, raising, and maintaining prices for NAND

9  Flash Memory sold indirectly to Plaintiffs and other indirect-purchasers throughout the United

10  States.

11      2.     Defendants and their co-conspirators formed an international cartel to illegally

12  restrict competition in the NAND Flash Memory market, targeting and severely burdening

13  indirect-purchasers throughout the United States.  During the Class Period, the conspiracy

14  affected billions of dollars of commerce throughout the United States.  The conspiracy

15  included communications and meetings in which Defendants agreed to eliminate competition

16  and fix the prices for NAND Flash Memory.  As a result of Defendants' price fixing

17  conspiracy, Plaintiffs have been injured in their business and property by paying more for

18  NAND Flash Memory than Plaintiffs otherwise would have paid in the absence of

19  Defendants' conspiracy.

20      3.     Plaintiffs bring this action seeking federal injunctive relief under Section 16 of

21  the Clayton Act, 15 U.S.C. § 26, for violations of Section 1 of the Sherman Act, 15 U.S.C. §

22  1, and to recover damages under state antitrust, consumer protection, unfair trade, and/or

23  deceptive trade practices laws, common law principles of restitution, disgorgement, unjust

24  enrichment, as well as to recover the costs of suit, including reasonable attorneys fees, for the

25  injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants'

26  conspiracy to fix, raise, maintain and stabilize the prices of NAND Flash Memory.

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    4.    Except where specifically stated otherwise, all allegations herein are on

2    information and belief.

3    **II.    JURISDICTION AND VENUE**

4    5.    This action is brought under Section 16 of the Clayton Act, 15 U.S.C. §26, to

5    obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to

6    recover damages, obtain restitution, and to secure other relief under state antitrust and

7    consumer protection laws, and to recover the costs of suit, including reasonable attorneys'

8    fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the

9    Defendants' violations of those laws.

10    6.    This Court has subject matter jurisdiction of the federal antitrust claims

11    asserted in this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. 26) and Title

12    28 United States Code Sections 1331 and 1337, and Section 1 of the Sherman Act (15 U.S.C.

13    1).  This Court has subject matter jurisdiction of the state-law claims asserted in this action

14    under Title 28, United States Code Sections 1332(d) and 1367, in that the matter in

15    controversy exceeds the sum of $5 million exclusive of interest and costs, members of the

16    indirect-purchaser Plaintiff class are citizens of states different from Defendants, and certain

17    Defendants are citizens or subjects of foreign states.

18    7.    Venue is proper in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. §

19    1391, because one or more of the Defendants resides, is licensed to do business, or is found or

20    transacts business in this District, and a substantial part of the events or omissions giving rise

21    to the Plaintiffs' claims arose in this District.

22    8.    Defendants conduct business throughout the United States, including in this

23    jurisdiction, and they have purposefully availed themselves of the laws of the United States,

24    including specifically the laws of the State of California and the individual states listed herein.

25    Defendants' products are sold in the flow of interstate commerce, and Defendants' activities

26    had a direct, substantial and reasonably foreseeable effect on such commerce.

27

28

2

9.      Defendants' conspiracy to fix the price of NAND Flash Memory substantially affected commerce throughout the United States and in each of the states identified herein because Defendants, directly or through their agents, engaged in activities affecting each such state.  Defendants have purposefully availed themselves of the laws of each of the states identified herein in connection with their activities relating to the production, marketing, and sale of NAND Flash Memory.  Defendants produced, promoted, sold, marketed, and/or distributed NAND Flash Memory, thereby purposefully profiting from access to indirect-purchaser consumers in each such state.  Defendants also contracted to supply or obtain goods or revenue related to the business for NAND Flash Memory.  As a result of the activities described herein, Defendants:

> a.      Caused damage to the residents of the states identified herein;
>
> b.      Caused damage in each of the states identified herein by acts or omissions committed outside each such state by regularly doing or soliciting business in each such state;
>
> c.      Engaged in persistent courses of conduct within each such state and/or derived substantial revenue from the marketing of NAND Flash Memory or the products in which they are used in each such state (and services relating to such marketing); and
>
> d.      Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while regularly doing or soliciting business in each such state, engaging in other persistent courses of conduct in each such state, and/or deriving substantial revenue from the marketing of NAND Flash Memory or the products in which they are used in each such state.

10.     The conspiracy described herein affected adversely every person nationwide and in each of the states identified in this Complaint who indirectly bought Defendants'

3

1    NAND Flash Memory.  Defendants' conspiracy has resulted in an adverse monetary effect on

2    indirect-purchasers in each state identified herein.

3         11.     Prices of NAND Flash Memory in each state can be manipulated by

4    conspirators within that state, outside of it, or both.  Without enforcing the antitrust and/or

5    consumer protection laws of each of the states identified herein, companies that break the law

6    will go unpunished.  Defendants knew that commerce in each of the states identified herein

7    would be adversely affected by implementing their conspiracy.

8                              III.     **DEFINITIONS**

9         12.     As used herein, the term "NAND Flash Memory" means Flash Memory based

10   on NAND technology that was sold during the Class Period.  NAND Flash Memory excludes

11   Flash Memory based on other technologies such as NOR flash, as well as all types of static

12   random access memory ("SRAM") or dynamic random access memory ("DRAM").  This

13   action is limited in scope to NAND Flash Memory purchased indirectly where NAND Flash

14   Memory is either a stand-alone product or a substantial component of another product,

15   including, but not limited to:

16        (1) Flash Memory cards, which are removable data storage devices used with products

17            such as digital cameras and video game consoles;

18        (2) USB flash drives, which have essentially replaced the floppy disk as a means to

19            transfer and store data to or from computers;

20        (3) Flash-based digital media players, such as the iPod nano, the iPod shuffle, the iPod

21            Touch and other flash-based MP3 and Portable Media Players (PMPs); and

22        (4) higher-end and next-generation mobile phones and portable computing devices,

23            such as the iPhone and iTouch.

24        13.     As used herein, the term "OEM" means any original equipment manufacturer.

25        14.     As used herein, the term "Class Period" means the time period January 1, 1999

26   until the present.

27

28
                                                                                              4
─────────────────────────────────────────────────────────────

## IV.    THE PARTIES

**A.    The Plaintiffs**

15.    During the Class Period, the following named Plaintiffs indirectly purchased NAND Flash Memory from one or more of the Defendants named herein for end use and not for resale.

16.    Plaintiff Peter DeChristopher, an Arizona resident, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

17.    Plaintiff Ina Fryer, an Arizona resident, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

18.    Plaintiff Sarah Hecht, an Arizona resident, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

19.    Plaintiffs Jean McClellan-Chambers and Jamac Enterprises, a resident of Arkansas and an Arkansas company, respectively, indirectly purchased NAND Flash Memory and were injured as a result of Defendants' illegal conduct.

20.    Plaintiff Trong Nguyen, a former California resident, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

21.    Plaintiff Jason Perkins, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

22.    Plaintiff Joseph Theisen, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

23.    Plaintiff Dan Harrison, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

24.    Plaintiff Tristen Woods, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

25.    Plaintiff Stuart Go, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

26.     Plaintiff Travis Richardson, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

27.     Plaintiff Richard Chris Rippel, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of the Defendants' illegal conduct.

28.     Plaintiff Calif-Coast Investigative Services, a California company, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

29.     Plaintiff Thomas Nigro, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

30.     Plaintiff Alva Dee Cravens, a resident of California, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

31.     Plaintiff Travis Wiebe, a resident of District of Columbia, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

32.     Plaintiff Joshua Steele, a resident of Florida, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

33.     Plaintiff Benjamin Northway, a resident of Iowa, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

34.     Plaintiff Lindsey Morgan, a resident of Kansas, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

35.     Plaintiff Joanne Myles, a resident of Maine, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

36.     Plaintiff Peter Burke, a resident of Massachusetts, indirectly purchased NAND Flash Memory and was injured as a result of the Defendants' illegal conduct.

37.     Plaintiff Andrew Kindt, a resident of Michigan, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

38.     Plaintiff James Burt, a resident of Minnesota, indirectly purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

6

1      39.     Plaintiff Martha Mulvey, a resident of Minnesota, indirectly purchased NAND

2      Flash Memory and was injured as a result of Defendants' illegal conduct.

3      40.     Plaintiff Harold Moore, a resident of New Hampshire, indirectly purchased

4      NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

5      41.     Plaintiff Anthony Cardinale, a resident of New Mexico, indirectly purchased

6      NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

7      42.     Plaintiff Kelly Fahner, a resident of New York, indirectly purchased NAND

8      Flash Memory and was injured as a result of Defendants' illegal conduct.

9      43.     Plaintiff Donna Jeanne Flanagan, a resident of North Carolina, indirectly

10     purchased NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

11     44.     Plaintiff Sandra Green, a resident of Rhode Island, indirectly purchased NAND

12     Flash Memory and was injured as a result of Defendants' illegal conduct.

13     45.     Plaintiff Christopher Bessette, a resident of South Dakota, indirectly purchased

14     NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

15     46.     Plaintiff George Davis, a resident of Tennessee, indirectly purchased NAND

16     Flash Memory and was injured as a result of Defendants' illegal conduct.

17     47.     Plaintiff Eric Ferguson, a resident of West Virginia, indirectly purchased

18     NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

19     48.     Plaintiff Michael Chek, a resident of West Virginia, indirectly purchased

20     NAND Flash Memory and was injured as a result of Defendants' illegal conduct.

21     49.     Plaintiff Thomas Huh, a resident of Wisconsin, indirectly purchased NAND

22     Flash Memory and was injured as a result of Defendants' illegal conduct.

23     50.     Plaintiff Jai Paguirigan, a resident of Wisconsin, indirectly purchased NAND

24     Flash Memory and was injured as a result of Defendants' illegal conduct.

25     51.     Plaintiffs and class members indirectly purchased the following stand-alone

26     NAND Flash Memory products:

27

28

7

1          a.      CompactFlash (most often used with digital cameras);

2          b.      SmartMedia (most often used with digital cameras);

3          c.      MultiMedia Card (most often used with digital cameras);

4          d.      Secure Digital Card (most often used with digital cameras, camcorders,

5                  mobile phones, and video game consoles);

6          e.      Memory Stick (most often used with digital cameras, digital music

7                  players, video game consoles, and mobile phones); and,

8          f.      USB flash drives (most often used with personal computers).

9      52.      Plaintiffs and class members indirectly purchased products, including the

10 following, in which NAND Flash Memory is a substantial component of another product:

11          a.      Digital media players (e.g., the iPod nano).

12          b.      Mobile phones (e.g., the iPhone).

13          c.      Portable computing devices (e.g., the iTouch)

14 **B.**      <u>**The Defendants**</u>

15      53.      Defendant Samsung Semiconductor, Inc. is a California corporation and is a

16 wholly owned and controlled subsidiary of Samsung Electronics Co. Ltd. with its principal

17 place of business at 3655 North First Street, San Jose, California, 95134. During the Class

18 Period, Samsung Semiconductor, Inc. sold and distributed NAND Flash Memory to

19 customers throughout the United States.

20      54.      Defendant Samsung Electronics Company, Ltd. is a business entity organized

21 under the laws of South Korea, with its principal place of business at Samsung Main Building,

22 250-2 ga, Taepyung-ro, Chung-gu, Seoul, Korea. During the Class Period, Samsung

23 Electronics Company, Ltd. manufactured, sold and distributed NAND Flash Memory to

24 customers throughout the United States. Samsung Electronics Company, Ltd. and Samsung

25 Semiconductor, Inc. are referred to collectively herein as "Samsung."

26      55.      Defendant Toshiba Corporation is a business entity organized under the laws

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1   of Japan with its principal place of business at 1-1 Shibaura, 1-chrome Minato-ku, Tokyo,

2   105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured, sold and

3   distributed NAND Flash Memory to customers throughout the United States.

4          56.    Defendant Toshiba America, Inc. is a Delaware corporation and is a wholly

5   owned and controlled subsidiary of Toshiba Corporation with its principal place of business at

6   1251 Avenue of the Americas, Suite 4110, New York, New York, 10020.  During the Class

7   Period, Toshiba America, Inc. sold and distributed NAND Flash Memory to customers

8   throughout the United States.

9          57.    Defendant Toshiba America Electronic Components, Inc. is a California

10  corporation and is a wholly owned and controlled subsidiary of Toshiba Corporation with its

11  principal place of business located at 19900 MacArthur Boulevard, Suite 400, Irvine,

12  California, 92612.  During the Class Period, Toshiba America Electronic Components, Inc.

13  sold and distributed NAND Flash Memory to customers throughout the United States.

14  Toshiba Corporation, Toshiba America, Inc., and Toshiba America Electronic Components,

15  Inc. are referred to collectively herein as "Toshiba."

16         58.    Hynix Semiconductor America, Inc. is a wholly owned and controlled

17  subsidiary of Defendant Hynix Semiconductor, Inc. with its principal place of business at

18  3101 North First Street, San Jose, California, 95134.  Hynix Semiconductor America, Inc. is a

19  California corporation.  During the Class Period, Hynix Semiconductor America, Inc. sold

20  and distributed NAND Flash Memory to customers throughout the United States.

21         59.    Defendant Hynix Semiconductor, Inc. is a business entity organized under the

22  laws of South Korea, with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub,

23  Icheon-si, Kyoungki-do, Korea, 467-701. During the Class Period, Hynix Semiconductor, Inc.

24  manufactured, sold and distributed NAND Flash Memory to customers throughout the United

25  States.  Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to

26  collectively herein as "Hynix."

27

28

9

1    60.    Defendant Renesas Technology Corporation is a business entity organized

2    under the laws of Japan with its principal place of business at Marunouchi Building, 4-1,

3    Marunouchi 2-chrome, Chiyoda-ku, Tokyo, 100-6334, Japan.  Renesas Technology

4    Corporation was established on or about April 1, 2003 as a joint venture of Hitachi and

5    Mitsubishi.  During the Class Period, Renesas Technology Corporation sold and distributed

6    NAND Flash Memory to customers throughout the United States.

7    61.    Defendant Renesas Technology America, Inc. is a Delaware corporation and is

8    a wholly owned and controlled subsidiary of Renesas Technology Corporation with its

9    principal place of business at 450 Holger Way, San Jose, California, 95134.  During the Class

10    Period, Renesas Technology America, Inc. sold and distributed NAND Flash Memory to

11    customers throughout the United States.  Defendants Renesas Technology Corporation and

12    Renesas Technology America, Inc. are referred to collectively herein as "Renesas."

13    62.    Defendant SanDisk Corporation is Delaware corporation with its principal

14    place of business at 601 McCarthy Blvd., Milpitas, CA 95035.  During the Class Period,

15    Sandisk Corporation sold and distributed NAND Flash Memory to customers throughout the

16    United States.

17    63.    Defendant Hitachi America, Ltd. is a wholly owned and controlled subsidiary

18    of Defendant Hitachi Ltd. with its principal place of business at 50 Prospect Avenue,

19    Tarrytown, New York 10591.  Hitachi America, Ltd. is a New York corporation.  During the

20    Class Period, Hitachi America, Ltd. sold and distributed NAND Flash Memory to customers

21    throughout the United States.

22    64.    Defendant Hitachi Semiconductor (America) Inc. is a subsidiary of Defendant

23    Hitachi America Ltd.  During the Class Period, Hitachi Semiconductor (America) Inc. sold

24    and distributed NAND Flash Memory to customers throughout the United States.  During the

25    Class Period Hitachi Semiconductor (America) Inc. changed its name to Renesas Technology

26    America, Inc., with headquarters at 450 Holger Way, San Jose, CA 95134.

27

28

10

1    65.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan,

2 with its principal place of business at 6-6, Marunouchi 1-chome, Choyoda-ku, Tokyo, 100-

3 8280 Japan.  During the Class Period, Hitachi Ltd. manufactured, sold and distributed NAND

4 Flash Memory to customers throughout the United States.  Hitachi Ltd. and Hitachi America

5 Ltd. and Hitachi Semiconductor (America) Inc. are referred to collectively herein as

6 "Hitachi."  During the Class Period, Renesas Technology Corporation was established as a

7 joint venture of Hitachi and Mitsubishi.

8 **C.    Co-Conspirators**

9    66.    Various persons and entities, whose identities are at this time unknown to

10 Plaintiffs, participated as co-conspirators in the violations alleged herein and performed acts

11 and made statements in furtherance thereof.  When Plaintiffs learn the identities of such co-

12 conspirators, Plaintiffs will seek leave to amend this complaint to add such co-conspirators as

13 Defendants.

14    67.    The acts charged in this Complaint have been done by some or all of

15 Defendants and their co-conspirators, or were authorized, ordered or done by their respective

16 officers, agents, employees or representatives while actively engaged in the management of

17 each Defendants' business or affairs.

18    68.    Each of the Defendants named herein acted as the agent or joint venture of or

19 for the other Defendants with respect to the acts, violations and common course of conduct

20 alleged herein.  Each Defendant that is a subsidiary of a foreign parent acts as the United

21 States agent for NAND Flash Memory made by its parent company.

22    69.    Defendants are also liable for acts done in furtherance of the alleged

23 conspiracy by companies they acquired through merger or acquisition.

24    **V.    NATURE OF TRADE AND COMMERCE**

25 **A.    Background of Flash Memory**

26    70.    Flash Memory is a type of electronic memory chip.  Flash Memory is non-

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    volatile in nature, meaning that it does not need continuous power to maintain the information

2    stored for the chip.  For purposes of this Complaint, NAND Flash Memory excludes all types

3    of Flash Memory other than NAND flash sold during the Class Period, such as NOR Flash

4    Memory, as well as all types of SRAM or DRAM.

5         71.    Currently, NAND and NOR are the two main types of nonvolatile memory

6    used in electronic devices to retain data when power is switched off.  NAND flash -- widely

7    used with digital cameras and digital music players -- writes data at high speed and generally

8    has greater storage capacity, while NOR flash excels at reading data at high speed, making it

9    suitable for running software in mobile phones.  Unlike NOR flash, which functions like a

10   computer's main memory, NAND flash works like a hard disk.  For example, in a digital

11   camera, NOR flash contains the camera's internal software, while NAND flash is used to

12   store the pictures.  Unlike DRAM and SRAM memory, which are found primarily as a

13   component in computers, NAND Flash Memory is ideally suited for a wide range of portable

14   and battery-powered applications because of its non-volatile nature.  It is ideally suited for

15   low power consumption.

16        72.    NAND Flash Memory is a commodity product packaged in different formats

17   for sales to users as either a memory device (e.g., flash memory cards, flash-based digital

18   music players, and USB drives) or as a component of a consumer device (e.g., iPod nanos and

19   iPhones).  Regardless of its specific applications, NAND Flash Memory is functionally

20   interchangeable across products.  Further, there is cross-elasticity of demand between NAND

21   Flash Memory and NAND Flash Memory-based products.  Indirect-purchasers, whether they

22   purchased NAND Flash Memory as a stand-alone product or as a substantial part of another

23   product, are therefore participants in the market for NAND Flash Memory.

24        73.    Developed by Toshiba in 1989, NAND Flash Memory offers fast write/erase

25   capability, while still being comparatively slower than NOR in the area of read speed.  NAND

26   is, however, more than sufficient for a majority of consumer applications such as digital

27

28
INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1   video, music or data storage.  NAND's fast write/erase speed combined with its higher

2   available densities and a lower cost-per-bit than NOR make it the favored technology for file

3   storage in a host of consumer applications.  "NAND Flash has wider application and greater

4   market potential than NOR," acknowledged Toshiba spokeswoman Hiroko Mochida in 2007.

5   "As more mobile phones require larger capacity to store large-sized music and video files,

6   NAND Flash Memory, which is (better) for larger-storage, will take over the NOR Flash

7   market," said Shin Young-jun, an official at Samsung Electronics, in 2007.

8       74.     For the past several years, the NAND Flash Memory industry has undergone

9   robust growth, as NAND Flash Memory and products that utilize NAND Flash Memory, such

10  as digital cameras, video game consoles, Flash Memory cards, USB flash drives, digital media

11  players (flash-based MP3 players and other flash-based PMPs), and higher-end and next-

12  generation mobile phones, have experienced surging sales.  According to DRAMeXchange, a

13  worldwide provider of market intelligence on semiconductor products, by April 2007 NAND

14  Flash Memory for digital cameras, mobile phones, digital media players, and USB drives

15  accounted for roughly 90% of NAND Flash Memory consumption.  Digital cameras store

16  images on NAND Flash Memory chips that are primarily designed as external removable

17  memory card.  Similarly, video game consoles use removable NAND Flash Memory cards to

18  store and transfer saved games and player information.  Flash-based digital media players use

19  NAND Flash Memory as the core interface to store music.   USB flash drives have emerged

20  as a preferred means of copying, storing, and transferring data between computers.

21      75.     USB flash drives are also increasingly used as a replacement for traditional

22  hard disk drives.  Newer formats such as the new USB/Memory card hybrid Intelligent Stick

23  are becoming a reality.

24      76.     Some examples of NAND Flash Memory as a stand-alone product are:

25          a.     CompactFlash (removable media format most often used with digital

26              cameras);

27

28
INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1              b.     SmartMedia (removable media format most often used with digital

2                     cameras);

3              c.     MultiMedia Card (removable media format most often used with digital

4                     cameras);

5              d.     Secure Digital Card (removable media format most often used with

6                     digital cameras, camcorders, mobile phones, and video game consoles);

7              e.     Memory Stick (removable media format most often used with digital

8                     cameras, digital music players, video game consoles, and mobile

9                     phones); and,

10            f.     USB flash drives (removable media format most often used with

11                     personal computers).

12      77.     Some examples of NAND Flash Memory as a substantial component of

13 another product are:

14            a.     the YP-25 digital media player from Samsung

15            b.     the Gigabeat digital media player from Toshiba

16            c.     the Sansa e200 digital media player from SanDisk

17            d.     the iPod nano digital media player

18            e.     the iPod shuffle digital media player

19            f.     the iPod touch

20            g.     the iPhone

21 Below are images of the some of the NAND Flash Memory products that fall within the scope

22 of this action.

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Toshiba Mini SD Card**



**SanDisk CompactFlash**



**SanDisk USB Drive**



**Early version of iPod Shuffle**



**Samsung Flash in iPod Nano**

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



**Toshiba NAND Flash Memory Products**

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

**B.      The Size and Structure of the Market for NAND Flash Memory**

78.      The Flash Memory market is primarily comprised of NAND and NOR technologies.  Because NOR costs more per megabyte than NAND flash, the industry has been focusing on NAND technology in the past decade.  The market for NAND Flash Memory is huge and has experienced substantial growth in recent years.  Market analysts estimated the size of NAND Flash Memory storage card market in revenue to be approximately $9 billion for 2005, which they expect will rise to $34.3 billion by 2008, approximately 280% growth.  The USB flash drive submarket was approximately $1.9 billion for 2005, and is expected to grow to $3.1 billion by 2008, more than a 60% increase.

79.      The market for the manufacture and sale of NAND Flash Memory is conducive to the type of collusive activity alleged herein.  Throughout the Class Period, Defendants collectively controlled a significant share of the market for NAND Flash Memory, both globally and in the United States.  Samsung is the clear market leader followed by Toshiba, Hynix, and Renesas.  Five  of the Defendants currently control approximately 92% of the NAND Flash Memory market.  During the Class Period, Defendants' market shares were approximately as follows:

**NAND Flash Market Share (Revenues)**

| Defendant | 1999 | 2003 | 2007 |
|-----------|------|------|------|
| Samsung   | 40%  | 49%  | 44%  |
| Toshiba   | 46%  | 37%  | 26%  |
| Hynix     | —    | —    | 17%  |
| Renesas   | —    | 13%  | 4%   |
| SanDisk   | 2%   | 1%   | 1%   |
| Hitachi   | 9%   | —    | —    |
| **Total** | **97%** | **100%** | **92%** |

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    As such, the Defendants' conspiracy to fix the price of NAND Flash Memory substantially

2    affected interstate trade and commerce in the NAND Flash Memory market.

3         80.    The market for NAND Flash Memory is subject to high manufacturing and

4    technological barriers to entry.  Efficient fabrication plants are large, costly, and time-

5    consuming to build.  It takes anywhere from 18 to 24 months to build a fabrication plant for

6    12-inch wafers using 45 nanometer process geometries.  These plants are also expensive to

7    build.  For example, Toshiba expects to spend approximately $9.5 billion on its next

8    generation fabrication plant.  The level of technical expertise and the amount of money that

9    must be allocated for research and development also make it extremely difficult for new

10   competitors to get into this industry.  In addition, as set forth herein, established companies

11   typically have cross-licensing and cross-purchasing agreements with each other to deter entry

12   into the market.

13        81.    A number of the Defendants and/or their corporate parents or subsidiaries,

14   including Samsung, Toshiba, and Hynix have either pled guilty to, or are currently being

15   investigated by the U.S. Department of Justice for entering into one or more price-fixing

16   agreements in other closely-related semiconductor industries similar to that alleged herein.

17   Such industries include DRAM computer chips and SRAM computer chips.  The DRAM and

18   SRAM industries are oligopoly industries dominated by many of the same Defendants here,

19   including Samsung, Hynix, Renesas and Toshiba.  The NAND Flash Memory industry has a

20   similar oligopoly structure to that of DRAM and SRAM.  The Defendants' entry into express

21   price-fixing agreements in other computer electronics markets suggests that agreement among

22   the NAND Flash Memory market participants has been required to achieve price uniformity at

23   supracompetitive levels and directed to implement output controls.

24        82.    The Defendants had contacts with each other in several related markets (*e.g.*,

25   the DRAM, SRAM, and NAND Flash Memory markets).  These multi-market contacts

26   allowed Defendants to transfer learning from one market to another and strengthened

27

28
                                                                                          18

1    Defendants' ability to monitor, enforce, and sustain the conspiracy.

2        83.    The same employees of Defendants were responsible for pricing of DRAM,

3    SRAM, and NAND Flash Memory sold in the United States.  For example, many of the

4    individuals employed by Defendants who pled guilty to criminal felonies in the DOJ's DRAM

5    investigation also had pricing responsibility for NAND Flash Memory.

6        84.    The Samsung employees who pled guilty to felony violations in connection

7    with DRAM and who also had responsibility for NAND Flash Memory pricing are: (a) Y.H.

8    Park, Vice-President of Sales, Samsung Electronics Company Ltd.; (b) I. U. Kim, Vice-

9    President of Marketing, Samsung Electronics Company Ltd.; and (c) Tom Quinn, Vice-

10   President of Marketing for Memory Products at Samsung Semiconductor, Inc.  Even after

11   entering a guilty plea in September of 2006, Quinn was seen in November of that year

12   representing Samsung at a conference it sponsored in San Jose, California.

13       85.    The Hynix employees who pled guilty to felony violations in connection with

14   DRAM and who also had responsibility for NAND Flash Memory pricing are: (a) D.S. Kim,

15   Senior Vice-President and General Manager of Worldwide Sales and Marketing; (b) C.K.

16   Chung, Director of Global Strategic Accounts; and (c) C.Y. Choi, Senior Manager and Vice-

17   President for Product Marketing and Vice-President for Operations.  As in DRAM, in terms

18   of day-to-day implementation of the NAND Flash Memory conspiracy, Defendants directed

19   their regional or account managers to contact each other and coordinate NAND Flash

20   Memory pricing.  These contacts could be by telephone or by face-to-face meetings at local

21   restaurants.  Through these contacts, Defendants' sales managers exchanged future price

22   information and entered into implicit or explicit pricing agreements.

23       86.    Considered as a whole, such evidence tends to exclude the possibility that

24   price uniformity at supracompetitive levels in the NAND Flash Memory industry is merely a

25   result of normal market forces, rather than express agreement.

26

27
                                                                                          19
28

1

**VI.     VIOLATIONS ALLEGED**

2        87.     During the Class Period, Defendants and their co-conspirators have agreed,

3  combined, and conspired artificially to raise, maintain, and stabilize the prices at which

4  NAND Flash Memory has been sold directly and indirectly in the United States at artificially

5  high levels.

6        88.     Prior to 1999, the average selling price for NAND Flash Memory was at a

7  decline.  As a result of Defendants' cartel-like activity, prices for NAND Flash Memory have

8  been maintained at supracompetitive levels from 1999 until the present.  In 1999, NAND

9  Flash Memory prices started to increase.  Beginning in 2000, and continuing through the first

10  quarter of 2001, the average price of NAND Flash Memory stabilized, then increased.

11        89.     While NAND Flash Memory prices began to somewhat decline at the end of

12  2001, the cartel created by Defendants operated to stabilize those declines so that prices were

13  still at supracompetitive levels. NAND Flash Memory prices remained at supracompetitive

14  levels even though Samsung and Toshiba, the two most dominant players in the NAND Flash

15  Memory market, more than doubled their production capacity from 2002 to 2005.

16  Defendants' collusive activity continued to keep NAND Flash Memory prices at

17  supracompetitive levels, despite the fact that the normal trend for technology products is steep

18  price declines over time as a result of economies of scales and learned efficiencies.

19  **A.     Defendants' Access to Exchange Pricing**

20        90.     Various industry trade organizations facilitate Defendants' NAND Flash

21  Memory cartel activities.  Defendants participated in numerous meetings of these trade

22  associations to discuss NAND Flash Memory pricing with the purpose and effect of raising,

23  fixing and stabilizing NAND Flash Memory prices.  Such meetings occurred at the following

24  trade associations:

25        a.     Joint Electron Device Engineering Council Solid State Technology

26  Association ("JEDEC"), a standard-setting organization which over the years has held dozens

27

28

20

1  of general membership meetings and regional meetings across the world.  Members of

2  JEDEC include Defendants Samsung, Toshiba, Renesas, Hynix, SanDisk, and Hitachi.

3      b.    Open NAND Flash Interface ("ONFI") group, the purpose of which is to meet

4  and discuss standards and production of NAND Flash Memory products.  Among the

5  members of the ONFI group are Defendants Hynix, and Hitachi.

6      c.    Secure Digital Card Association, the purpose of which is to set an industry

7  standard and promote the SD Flash Memory card in digital applications.  Its members include

8  Defendants Samsung, Toshiba, Renesas, Hynix, SanDisk, and Hitachi.

9      d.    MultiMedia Card Association, an open standard memory card organization,

10  whose members include Defendants Samsung, Renesas, Toshiba, Hitachi, and SanDisk.

11      e.    Global Semiconductor Association, Inc., the alleged purpose of which is to

12  provide a platform for global collaboration among semiconductor suppliers and to provide

13  market intelligence.  Among the members are Defendants Samsung, Toshiba, and Hitachi.

14      f.    CompactFlash Association, founded in 1995 as "a non-profit, mutual-benefit"

15  association to promote various forms of flash memory.  Defendants SanDisk, Samsung, and

16  Toshiba or their affiliates, are members of the CompactFlash Association.

17      91.    During the Class Period, meetings and conversations occurred among the

18  Defendants through these various trade associations to discuss the prices of NAND Flash

19  Memory.  For example, over the years, CompactFlash members have met in Japan, Germany,

20  the United Kingdom and the United States.  Members of CompactFlash first got together in

21  New Orleans in February 1997 to meet and give demonstrations of their products at PMA 97.

22  PMA stands for Photo Marketing Association, which annually conducts an international photo

23  industry expo.  On March 10-11, 1997, CompactFlash held its first general meeting, with

24  product demonstrations and press briefings, in London.  Other CompactFlash meetings and

25  presentations were held:

26      ▪    January 8, 1998, Consumer Electronics Show in Las Vegas.

27

28

21

1   ▪ February 10, 1998, PMA 98 in New Orleans.

2   ▪ September 16, 1998, Photokina 98 in Cologne, Germany.

3   ▪ September 30, 1998, World PC Expo in Tokyo.

4   ▪ January 7, 1999, International Consumer Electronics Show 1999 in Las Vegas.

5   ▪ February 18, 1999, PMA 1999 in Las Vegas.

6   ▪ September 7, 1999, World PC Expo 99 in Tokyo.

7   ▪ December 27, 1999, Consumer Electronics Show 2000 in Las Vegas.

8   ▪ September 20, 2000, Photokina 2000 in Koln, Germany.

9   ▪ October 17, 2000, World PC Expo 2000 in Tokyo. At this event Compact Flash also
10  conducted "a free Host Developer Seminary" at Tokyo Fashion Town, according to a
11  news release. "Presentations will be in Japanese and handouts will also be in
12  Japanese," the release said.

13  ▪ January 6, 2001, Consumer Electronics Show 2001 in Las Vegas.

14  ▪ February 11, 2001, PMA 2001 in Orlando, Florida.

15  ▪ January 8, 2002, International Consumers Electronics Show 2002 in Las Vegas.

16  ▪ September 25, 2002, Photokina 2002 in Koln, Germany.

17  ▪ October 16, 2002, World PC Expo in Tokyo.

18  ▪ September 17, 2003, World PC Expo in Tokyo.

19  ▪ January 5, 2006, International Consumers Electronics Show 2006 in Las Vegas. The
20  CompactFlash Association and 60 of its members met at the show to celebrate the
21  10th anniversary of the founding of the association and presented exhibits, according
22  to a news release.

23      92.    The September 7, 1999 World PC Expo '99 in Tokyo was of special
24  significance because it appears to have marked the beginning of cartel-like activities. The
25  CompactFlash Association had 50 members exhibiting at the Expo, a record number for an
26  international show. In addition to special meetings, dinners and other activities at the Expo

27
28
INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    that could facilitate cartel actions, the sponsor of the Expo said in a news release:

2    "Networking opportunities will also be promoted for overseas exhibiting companies by

3    holding an International Business Partnership Party where company representatives can meet

4    with Japanese buyers and an International Business Seminar that will examine IT

5    industry/market trends in China, India and Taiwan."  The release also said: "WORLD PC

6    EXPO has gained a reputation as a gateway to the world's second largest market in IT and as

7    a place where the alliances and OEM partners from the information home appliance age

8    assembly for Asia's largest IT showcase...Most overseas exhibiting companies see the EXPO

9    as a chance to meet potential business partners in Asian markets, including the vast emerging

10   market in China."

11            93.     The conduct of the "business" of these organizations gave Defendants and their

12   co-conspirators the cover needed to contact one another with impunity and to communicate

13   competitive information, including NAND Flash Memory pricing.  These "consortium"

14   meetings often led to separate and more private meetings at which NAND Flash Memory

15   prices and markets were discussed.

16            94.     The headquarters of several Defendants are located within blocks of each

17   other on the same street in San Jose, California.  This proximity provides unlimited

18   opportunities for Defendants to participate in NAND Flash Memory cartel activities:

19       ▪  Hynix Semiconductor America Inc., 3101 North First Street

20       ▪  Samsung Semiconductor Inc., 3655 North First Street

21       ▪  Another Defendant in San Jose, Renesas Technology America Inc., is located nearby

22          at 450 Holger Way, and Defendant SanDisk is in the adjacent city of Milpitas,

23          California.

24            95.     Plaintiffs further allege on information and belief that various Defendants and

25   co-conspirators met at Birk's Restaurant, located at 3955 Freedom Circle in Santa Clara,

26   California, which is considered the quintessential gathering place for top executives in Silicon

27

28
                                                                                        23

1    Valley.

2         96.    All of the above opportunities to exchange and monitor NAND Flash Memory

3    pricing information allowed Defendants to communicate their intended prices for NAND

4    Flash Memory to each other throughout the Class Period.  These conversations were not

5    simply the sharing of publicly available information.  Rather, Defendants communicated with

6    each other prior to price moves and collected competitive information similar to the pattern

7    seen in the DRAM and SRAM memory product markets.  Information sharing was one of the

8    means utilized by Defendants to stabilize and maintain NAND Flash Memory prices at a

9    supracompetitive level.

10        97.    One commentator noted the pervasiveness of cartel activity among the

11   Defendants and others within the overall semiconductor industry – "If the DOJ wanted to, it

12   could just go down every line in the semiconductor industry and find the same issue," said

13   Gartner, Inc. analyst Richard Gordon.  "That's because there are a relatively few number of

14   suppliers in the chip industry and an open flow of communication between competitors and

15   customers, who may not define price fixing the same way the DOJ does," he said."

16   (http://blog.tmcnet.com/regulations/enforcement/doj-subpoenas-go-to-amd-nvidia-antitrust-

17   violations-eyed.asp)

18        98.    Certain websites, such as DRAMeXchange (found at

19   http://www.dramexchange.com), provide flash memory market intelligence and allow

20   Defendants to track each other's NAND Flash Memory prices as well.

21   **B.    Cross-Licensing and Cross-Purchasing Agreements**

22        99.    There are rampant cross-licensing, cross-purchasing, and other cooperative

23   arrangements in the NAND Flash Memory market, all of which create additional

24   opportunities for collusive activity.  For example:

25        ▪   On June 6, 2001, SanDisk Corporation and Toshiba America Electronic

26            Components Inc. announce the opening of their new plant for the production of

27

28
                                                                                          24

1   advanced Flash Memory fabrication.  "FlashVision LLC, a new semiconductor

2   company started by Toshiba and SanDisk, is utilizing fabrication space at

3   Dominion Semiconductor, a company owned by Toshiba, in Manassas, VA," a

4   SanDisk news release said.

5   ▪ On August 19, 2002, Samsung Electronics Company and SanDisk announce that

6   they have signed cross-license and supply agreements covering NAND Flash

7   Memory technology.  "With these agreements, both companies have dismissed

8   lawsuits that they had filed earlier against each other in California and Texas

9   courts," a SanDisk news release said.

10   ▪ On September 10, 2002, SanDisk and Toshiba America Electronic Components

11   Inc., announce the introduction of a next general single-die, 1 gigabit (Gb) NAND

12   Flash Memory chip manufactured using advanced 0.13 micro process technology.

13   ▪ On October 3, 2002, Hitachi Ltd. and Mitsubishi Electric Corporation announce a

14   basic agreement to establish a new semiconductor company, Renesas Technology

15   Corporation, under special provisions for corporate reorganization under the

16   Japanese Commercial Code.  "A stable and firm financial position will be achieved

17   through integration by expanding sales, reducing costs by combining development

18   facilities, sharing manufacturing equipment and purchasing materials in bulk," a

19   Renesas news release said.

20   ▪ On October 9, 2002, SanDisk and Toshiba Corporation announce they will

21   develop 90-nanometer process technology that will lead to overall increased

22   supply and improved competitiveness of NAND Flash Memory.

23   ▪ On June 11, 2003, Toshiba Corporation and SanDisk announce the development of

24   a high density NAND Flash Memory cell structure that allows fabrication of 4-

25   Gigabit (Gb) NAND Flash Memory using the 90-nanometer (nm) design rules.

26

27

28

1  ▪  On December 2, 2003, Toshiba Corporation and SanDisk announce they intend to
2     cooperate in the construction of a $1.9 billion wafer fabrication facility at
3     Toshiba's Yokkaichi operation in order to meet the growing demand for NAND
4     Flash Memory.
5  ▪  On December 11, 2003, Hitachi Ltd. and Renesas Technology Corporation
6     announce "the development of a basic flash memory cell technology that achieves
7     the world's smallest cell area..."  A Hitachi news release said, "Hitachi's Central
8     Research Laboratory and Renesas Technology collaborated in the development of
9     a basic technology for second-generation AD-AND flash memory that offers both
10    high speed writing and a fine process."
11 ▪  On April 19, 2004, Renesas Technology Corporation and Hitachi Ltd. announce
12    the development of a 32-bit RISC CPU core for use in control devices in the
13    automotive, industrial and consumer fields.
14 ▪  On June 1, 2005, Hitachi Ltd. and Renesas Technology Corporation announce a
15    new stacked chip technology that uses a through-hole interconnection method to
16    enable chips to bond at room temperature.
17 ▪  On March 20, 2007, Hynix Semiconductor Inc. and Toshiba Corporation announce
18    they have signed patent cross licensing and product supply agreements covering
19    semiconductor technology.  According to a Toshiba new release, the agreement
20    settles all pending patent-related litigation between the two companies. "We
21    believe the agreements will become a good foundation for our two companies to
22    build a mutually beneficial business relationship in the future," said O.C. Kwon,
23    senior vice president, Hynix Semiconductor.
24 ▪  On March 21, 2007, Hynix Semiconductor Inc. and SanDisk Corporation
25    announce they have reached an agreement for a patent cross license covering the
26    Flash memory components of both companies and an agreement for product
27
28

26

1    supply.  The agreement calls for a joint venture between the two companies which

2    will manufacture memory components and sell NAND memory system solutions.

3    "We look forward to building on this relationship to our companies' mutual

4    benefit." said O.C. Kwon, senior vice president, Hynix Semiconductor.

5    ▪  On December 7, 2007, Samsung Electronics Company Ltd. and Toshiba

6    Corporation announce they have licensed to one another the rights to produce,

7    market and sell memory with the specifications and trademarks of Samsung's

8    OneNADNTM and Toshiba's LBA-NANDTm memory chips.

9    100.    These interlocking arrangements and relationships provided opportunities for

10   collusion, reduced the cost of colluding, and provided clear avenues for price signaling.

11   Antitrust risk is particularly acute when there are cooperative efforts to develop, design,

12   implement, and license certain technologies, as exist in the NAND Flash Memory market.

13   These combinations substantially lessen competition and/or tend to create a monopoly and

14   were used as part and parcel of the conspiracy and in furtherance of it.

15   101.    Defendants engaged in these cartel-like activities in order to reap windfall

16   profits.  Because of high barriers to entry, significant economies of scale, and the experience

17   curve effect in the NAND Flash Memory industry, Defendants' conduct helped them

18   dominate the NAND Flash Memory market.   By monitoring and enforcing their agreements

19   regarding NAND Flash Memory prices, Defendants were able to enjoy the economic benefits

20   of their conduct.

21   102.    Defendants conspired and agreed to fix, raise, and maintain NAND Flash

22   Memory prices at supracompetitive levels in order to preserve the economic benefits accruing

23   from their financial partnerships.

24   103.    Defendants, through their officers, directors, and employees, participated in

25   anti-competitive behavior and unfair business practices which effectuated harm on businesses

26   and consumers and violated standards of ethical behavior through the following conduct:

27

28

1            a.     Participating in meetings and conversations, including through various

2                   trade associations and committees, to exchange NAND Flash Memory

3                   pricing information in the United States;

4            b.     Agreeing, during those meetings and conversations, to charge prices at

5                   specified levels and otherwise to increase and maintain prices of

6                   NAND Flash Memory sold in the United States;

7            c.     Issuing price announcements and quotations in accordance with the

8                   agreements reached;

9            d.     Selling NAND Flash Memory to various customers in the United States

10                  at fixed, non-competitive prices.

11   **C.**     **Communications Among Defendants**

12       104.    To some degree the NAND Flash Memory conspiracy was intertwined, at least

13  in its initial years, with the DRAM and SRAM conspiracies.  Because the same personnel at

14  the various memory manufacturers were exchanging pricing and other competitive

15  information about DRAM and SRAM, it was natural that they would do so for NAND Flash

16  Memory products as well.

17       105.    Defendants' employees had meetings with their peers at competitor

18  companies to exchange information about the memory products they sold, including

19  information about capacity and prices of NAND Flash Memory.  Defendants endorsed the

20  sharing of competitive information so long as it was reciprocal.

21       106.    In August of 1998, Samsung told Hynix that it would be attempting to raise

22  memory prices "across the board in September."  Samsung reportedly told Hynix that it would

23  "coordinate with Japanese suppliers, asking them to raise, or at least not to lower from August

24  prices."

25       107.    In September of 1998, Micron Technology, Inc.'s President and CEO Steve

26  Appleton received from Yukio Sakamoto of Kobe Steel Ltd. a "random note of

27

28

28

1   Samsung/Nikkei people information."  Sakamoto reported that he "met Samsung Director and

2   Nikkei reporter last night and today … summary of key information (both of Samsung and I

3   well know about anti-trust law so that we never discussed that area) … Samsung will de-

4   emphasize 64M DRAM, but will emphasize … Flash (aiming 70% market share!!)."

5          108.    As part of its disclosures in exchange for leniency from the DOJ, Micron

6   Technology, Inc. admitted that Tom Addie, its Regional Sales Manager for Apple Computer,

7   had communications with John Cerrato, Samsung's Apple Account Manager, regarding

8   "products their companies sold and coming market trends."  Further, Micron also

9   acknowledged that Jon Biggs, Micron's Regional Sales Manager for Gateway Computers, had

10  communications with Tom Quinn of Samsung including "in general terms, their employers'

11  current pricing on various products … [and] their inventory levels on various products."

12         109.    On September 7, 2000, Jay McBroom, Manager of Central Area Sales for

13  Hynix's U.S. subsidiary, sent an e-mail to his colleagues in other regions saying "[l]et me

14  know any competitive information that you garner."

15         110.    In March of 2001, there was an information-sharing session between Hynix

16  and Winbond Electronics Corporation, another company involved in the DRAM price-fixing

17  investigation, concerning "Fab Status" for "Fab2 (6"0:  47K/0.6-0.35um/SRAM, Flash,

18  Multimedia, Foundry)."

19         111.    Information sharing among some of the Defendants even extended to internal

20  documents created by the Defendant companies.  For example, Stefan Schauss of Winbond

21  Electronics Corporation admitted having communications with Samsung about flash memory

22  in which they exchanged roadmaps.

23         112.    During 2001, NAND Flash Memory flash memory contract pricing, like

24  DRAM pricing, experienced a decline.  Then, in the first quarter of 2002, the sales price per

25  gigabit of 512Mb NAND (which at the time was the dominant NAND component, accounting

26  for more than 68 percent of NAND sales by gigabit) increased more than 20 percent.  These

27

28

1    NAND Flash Memory price increases coincided with price increases led by Samsung in the

2    related DRAM market that occurred in late 2001 are and were the product of collusion among

3    Defendants.

4         113.     In late 2001, D.S. Kim of Hynix and Y.B. Rha, then Director of Sales &

5    Marketing for Samsung, met for breakfast at a restaurant in Korea (one of several similar

6    meetings they had between 1999 and 2002).  Kim "acknowledge[d] that they were in a

7    common mood and would cooperate on pricing."  Kim subsequently advised his subordinates

8    of this meeting.  C.K. Chung of Hynix knew of these meetings and that the two companies

9    were "in the same boat with pricing."  As Paul Palonsky of Hynix's U.S. subsidiary (and who

10   is still employed at Hynix) characterized it, "C.K. Chung and the Koreans saw Samsung as the

11   big brother, and they thought if Samsung were getting a certain price, Hynix should get it

12   too."  These meetings in Korea set the stage for collusion between Samsung, Hynix and others

13   that encompassed multiple memory products.  Palonsky referred to a "pervasive thirst" for

14   competitive pricing information within the "Hynix culture."  During internal conference calls

15   at Hynix, employees would routinely relate pricing information received by their "buddies"

16   employed by competitors.

17        114.     Defendants continued to have meetings during the 2002 to 2006 period to

18   share competitive information about NAND Flash Memory.

19        115.     In February of 2002, Samsung's Vice-President of Global Accounts Sales and

20   Marketing wrote, "[i]n order not to damage ourselves I think we should be closer to Micron's

21   pricing than Hynix, and Hynix may be benefiting much more than Samsung and Micron with

22   this strategy.  I don't want to be at the top of the pack if the demand slackens in Q2.  If we are

23   in the middle, we can still convince the customer to take the volume and let them punish

24   someone else temporarily, even if this means our market share goes up."

25        116.     In March of 2002, sales and marketing personnel at Samsung discussed

26   "preventing a price war for share" with their competitors.  They stated, "[i]f we all set

27

28
                                                                                            30

1    reasonable sales expectations at the Global accounts that no major supplier feels his share is

2    being attacked, we can all enjoy reasonable pricing for reasonable volume.  If we get too

3    greedy for increased volumes over what the customer has asked us to commit, our competitors

4    will fight back aggressively beginning with secret deals, etc.  The market shares are fairly

5    comfortable for the major suppliers at this time so this scenario is possible."

6           117.    The average price per gigabit of NAND Flash Memory fluctuated during 2003,

7    but remained relatively flat for the year.  The second half of 2003, in particular, experienced

8    rapid increases in the average sales price per gigabit of NAND.  During much of 2003, there

9    was a NAND Flash Memory flash memory shortage brought about by Samsung and its rivals

10   jointly failing to produce enough capacity to meet demand.  By July of 2003, this shortage

11   had caused NAND Flash Memory flash memory prices to increase over 10 percent, depending

12   on density.  The shortage and higher prices continued through November of 2003 and for the

13   rest of the year.

14          118.     The prices between 2001 and 2003 for NAND Flash Memory flash memory in

15   seven popular densities remained stable.

16          119.    The tight NAND Flash Memory capacity situation continued throughout much

17   of the first half of 2004, but, beginning in September of 2004, NAND Flash Memory's

18   average contract prices by density increased by 12 percent and spot prices increased by 15

19   percent, following price hikes by Samsung.  Samsung engaged in such price hikes, despite the

20   fact that Hynix was increasing its presence in the market.  This indicates that Samsung was

21   not seriously concerned about any possible competition form Hynix.  In the latter part of the

22   year, there was a shortage for 2Gb and 4Gb NAND Flash Memory components manufactured

23   by Samsung and Toshiba, which caused some stabilization of NAND Flash Memory prices.

24          120.    The shortage in NAND Flash Memory supply continued in the first four

25   months of 2005, with respect to most densities.  Samsung and Toshiba continued to cause

26   prices to be fairly stable.

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

121.    While there was a slight oversupply at the beginning of the third quarter of 2005, Samsung and Toshiba jointly restricted supply in July of 2005 and began placing second and third tier customers on allocation.  This tight supply situation led to increased prices continuing into the fourth quarter.  One analyst who reviewed spot prices for NAND Flash Memory pricing for the month of October of 2005 found that spot prices increased 11 percent for 8Gb units, 24 percent for 4Gb units, 32 percent for 2Gb units, and 22 percent for 1Gb.  Each of these spot price increases was attributed to supply shortages, which was a pretextual excuse to cover up the conspiracy.  The shortages were artificial and used to support the price of NAND Flash Memory.

122.    These price increases produced enormous profits for Defendants.  In 2005, the NAND Flash Memory businesses of Samsung, Toshiba and Hynix collectively generated more than $6 billion in operating profits.

123.    The market's structure also facilitated coordination among Defendants to restrict output to a mutually acceptable level in order to maintain supracompetitive prices.  For example, on March 20, 2006, Hynix warned investors that the prices of NAND Flash Memory could fall as much as 50% for the year.  Yet, the next day, Samsung publicly announced that prices would recover and stabilize.  According to DRAMeXchange, the average contract price for the benchmark four-gigabit NAND flash chip rose 5.3% to $8.70 in early May from $8.26 in late April.

124.    In early May 2006, Samsung and Hynix both raised prices on some NAND Flash Memory chips.  Woosik Chu, senior vice president of investor relations at Samsung Electronics, explained the company's price increases in Flash Memory.  "The overall average selling price of NAND flash is quite stable now, which is good for margins because we see accelerated decline in costs.  We expect the NAND flash market to gradually get better and better throughout the second quarter."  James Kim, vice president of investor relations at Hynix, explained the company's price increases in NAND Flash Memory:  "The NAND flash

32

1  market is returning to a more stable pricing environment."

2        125.    The first Flash Memory Summit was held August 8-10, 2006, in San Jose

3  California.  The second Flash Memory Summit was held August 7-9, 2007, in Santa Clara,

4  California.  Sponsors of the 2007 Summit included Defendants SanDisk, Samsung, and

5  Toshiba.  Experts from Defendants SanDisk, Samsung, and Toshiba presented at sessions

6  during the 2007 Summit.

7        126.    As of August 2006, NAND Flash Memory prices had stabilized.  This is

8  another example of Defendants' attempt to fix prices by controlling output and

9  communicating with each other prior to price moves.

10        127.    During the first few months of 2007, spot prices for NAND Flash Memory

11  continued to fall across all densities, but, as alleged above, the Defendants were making

12  efforts during the last quarter of 2006 to reduce NAND supply relative to expected demand

13  growth.

14        128.    In March of 2007, Samsung made analyst presentations at a Merrill Lynch

15  conference and at a Credit-Suisse conference saying that it had "[s]tabilized price erosion

16  from March 2007" thanks to "[s]upply constraints due to cautious supply…."  Both

17  presentations noted the "supply constraint" in NAND Flash Memory and said that in the

18  second half of 2007, "[s]evere shortage expected with strong recovery of margin."  In the

19  absence of inside knowledge of what its competitors planned to do, Samsung would have no

20  way of making such a confident prediction.

21        129.    In the latter half of March 2007, a trade publication based in Taipei, Taiwan

22  stated that "[s]ince late February, positive means regarding the NAND flash industry started

23  spreading.  Some industry players started seeing leading players, including Samsung

24  Electronics and Hynix Semiconductor, stop reducing their quotes and hold firm in price

25  negotiations.  Later, some memory module houses…started foreseeing a shortage in the

26  second quarter."  A few days later, the same publication ran an article reflecting a discussion

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    with Chang-Gyu Hwang, President of Samsung's semiconductor business since 2000.  That

2    article stated, "Samsung has previously mentioned that fellow memory makers who adopt a

3    more cautious approach to expansion over NAND flash are also another reason for stabilizing

4    the industry trend.  The memory maker observed that major NAND flash suppliers have all

5    reduced their capacity."  Thus, it is clear that this reduction in capacity was one carried out by

6    all of the leading NAND Flash Memory manufacturers.  Another article from the same date

7    indicated that Mr. Hwang was "very bullish on flash prices in the second half of the year."

8         130.    These parallel supply reductions by major manufacturers of NAND Flash

9    Memory occurred because flash memory were the product of collusion.  In late March of

10   2007, reports circulated that Samsung and Hynix had agreed to restrain production of NAND

11   Flash Memory.  One industry analyst noted that "[t]o say there's a fundamental issue with

12   supply in the NAND-flash base is ludicrous…Capacity was artificially manipulated to firm

13   pricing during a weak first quarter."

14        131.    Another source quoted Gartner, Inc., an industry analyst, as saying, "some

15   [NAND Flash Memory] supply is being deliberately held back in inventory."  This same

16   source ended his discussion with the question, "[i]s there a conspiracy in NAND?"  At the

17   same time, Nam Hyung Kim, an analyst for iSuppli, was quoted as saying that "'[t]he South

18   Korean suppliers, Samsung Electronics Co. Ltd. and Hynix Semiconductor Inc., are

19   decelerating their NAND production growth, leading to a more balanced supply/demand

20   situation and firmer pricing in the market.'"  According to Kim, Hynix and Samsung started

21   migrating production in the fourth quarter of 2006 from NAND Flash Memory to DRAM,

22   causing a significant decline of excess NAND Flash Memory supply and surplus inventory in

23   the supply chain.

24        132.    Also in late March, Hynix and Toshiba announced that they had entered into

25   the cross-licensing agreements described earlier.  O.C. Kwon, Senior Vice-President of

26   Hynix, stated:  "We believe that the agreements will become a good foundation for our two

27

28
                                                                                              34

1  companies to build a mutually beneficial business relationship in the future." Mr. Shozo

2  Saito, Corporate Vice President and Executive Vice President, Semiconductor Company,

3  Toshiba Corporation, echoed that sentiment, stating: "through these agreements, we can now

4  strengthen our respective businesses." The agreements between Hynix and Toshiba were

5  followed one day later by the announcement of agreements between Hynix and Toshiba's

6  joint venture partner, SanDisk, to cross license their respective NAND intellectual property.

7  Within days of the agreements between Hynix, Toshiba, and SanDisk, and the

8  contemporaneous comments made by Samsung, NAND contract prices began to increase.

9      133.    As a result of Defendants' collusion, contract prices for MLC and SLC NAND

10  Flash Memory turned around substantially beginning in the latter part of March of 2007

11  according to DRAMeXchange.

12      134.    Spot prices for NAND Flash Memory also increased during this same period

13  according to DRAMeXchange.

14      135.    Spot prices increased in June of 2007 and then again in August of 2007.

15      136.    By early August of 2007, Samsung raised its NAND Flash Memory price

16  quotations to its contract customers by 20 percent and indicated it would not be providing any

17  discounts to those customers.

18      137.    As the foregoing data reflect, these prices increases were not limited to

19  Samsung. On September 26, 2007, Shozo Saito, President and CEO of Toshiba's

20  semiconductor business, reported that Toshiba was unable to meet demand for NAND Flash

21  Memory and was sold out until December.

22      138.    These price increases were driven not by demand, but by supply constraints

23  engineered collusively by Defendants.

24      **VII.    THE DEPARTMENT OF JUSTICE INVESTIGATION**

25      139.    In June of 2002, the U.S. Department of Justice launched an investigation into

26  price fixing in the global memory products industry and a federal grand jury in San Francisco

27

28
                                                                                          35

1   issued its first subpoena in the probe on June 17 of that year.  By the beginning of 2007, a

2   total of 18 individuals and four companies had been charged as a result of the "ongoing

3   antitrust investigation" into DRAM memory products.  Criminal fines totaling more than

4   $730 million have been imposed against the DRAM cartel members, including the following

5   companies and/or their agents: Defendants Samsung Electronics Company Ltd., Samsung

6   Semiconductor Inc. and Hynix Semiconductor Inc.

7          140.     The ongoing investigation resulted in subpoenas being sent in October 2006 to

8   approximately 23 companies in connection with cartel activity in the SRAM industry,

9   including Defendants Samsung, Toshiba, Hynix, and Renesas.  A DOJ spokesperson was

10  quoted as saying: "[t]he U.S. Department of Justice's antitrust division is conducting an

11  investigation regarding anti-competitive practices against chief SRAM manufacturers." DOJ's

12  SRAM investigation concerns anti-competitive conduct that was continuing at least as

13  recently as 2005.

14         141.     The admitted illegal conduct in the DRAM criminal case, as well as the alleged

15  illegal conduct in the SRAM criminal case, demonstrate that Defendants' respective corporate

16  cultures encouraged the type of conduct alleged herein.  In November of 2007, Kim Yong

17  Chul, the former chief lawyer for Samsung, admitted that the company "instructed me to

18  commit crimes."  Chul continued, "[a] basic responsibility for all Samsung executives is to do

19  illegal lobbying, buying people with money."  Chul also acknowledged that he fabricated

20  court evidence on behalf of the company and its executives, and several Samsung executives

21  have recently been convicted of bribery and other white collar crimes.

22         142.     The next target in the worldwide memory industry probe was Flash Memory.

23  On September 15, 2007, the DOJ disclosed it had been investigating the NAND Flash

24  Memory industry.  The San Jose (CA) Mercury News reported on that date: "Federal

25  investigators and companies subpoenaed in the probe declined to comment on its focus.  But

26  experts said it could look at price fixing since prices took an unusual climb in spring and this

27

28
                                                                                                    36

1   summer after a steep fall in the first quarter and late last year." Gina Talamona, Justice

2   Department spokeswoman, was quoted as saying: "The antitrust division is investigating the

3   possibility of anti-competitive practices in the flash memory industry." Several companies

4   admitted they had received subpoenas from the San Francisco grand jury, including

5   Defendants Toshiba, SanDisk, Samsung Electronics and Renesas Technology, the joint

6   venture of Hitachi and Mitsubishi Electric.

7          143.    In order for the DOJ to institute a grand jury investigation, a DOJ Antitrust

8   Division attorney must believe that a crime has been committed and prepare a detailed memo

9   to that effect. *Antitrust Grand Jury Practice Manual,* Vol. 1, Ch. I.B.1. Then, the request for

10  a grand jury must be approved by the Assistant Attorney General for the Antitrust Division

11  based on the same standard of a crime having been committed. *Id.* The fact that the DOJ

12  Antitrust Division's investigation is criminal, as opposed to civil, is particularly relevant to

13  the plausibility of the allegations of NAND Flash Memory price-fixing. The Antitrust

14  Division's "Standards for Determining Whether to Proceed by Civil or Criminal

15  Investigation" state: "In general, current Division policy is to *proceed by criminal*

16  *investigation* and prosecution *in cases involving horizontal, per se unlawful agreements such*

17  *as price fixing*, bid rigging and horizontal customer and territorial allocations. *Antitrust*

18  *Division Manual,* Ch. III.C.5. (emphasis added). In short, the DOJ's initiation and

19  continuation of *criminal* proceedings shows that there is good reason to believe that

20  Defendants violated the antitrust laws.

21         144.    In an 8-K filing with the U.S. Securities and Exchange Commission, SanDisk

22  disclosed on August 31, 2007 that it had received grand jury subpoenas issued from the U.S.

23  District Court in San Francisco regarding the federal investigation into antitrust violations in

24  the NAND Flash Memory industry. SanDisk said its founder and chief executive officer, Eli

25  Harari, also was subpoenaed in the investigation. In addition, SanDisk said it had received a

26  notice from the Canadian Competition Bureau that that agency had commenced an industry

27

28
                                                                                          37

1  probe into alleged anti-competitive activity in the supply of NAND Flash Memory chips to

2  Canada and requesting SanDisk preserve any relevant records.

3          145.    On September 1, 2007, the Japanese electronics firm Toshiba Corporation said

4  it had been subpoenaed by the DOJ about its NAND Flash Memory business.  A Toshiba

5  spokesman in Tokyo, Keisuke Ohmori, said the company's U.S. semiconductor sales unit,

6  Toshiba America Electronic Components, had received the subpoena.

7          146.    Ironically, the SanDisk and Toshiba disclosures came less than a week after the

8  two companies announced the opening of a joint venture to produce NAND Flash Memory

9  products.  A SanDisk news release dated September 4, 2007, said the "Fab 4" 300 mm wafer

10 fabrication facility was opened at Toshiba's Yokkaichi Operations in Mie Prefecture, Japan.

11 Construction of the facility began in August, 2006.  "Fab 4 is testimony to the success of the

12 great partnership and long-term commitment between Toshiba and SanDisk," said SanDisk

13 CEO and Chairman Eli Harari.

14      **VIII.   THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS**

15         147.    Defendants' conspiracy to raise, fix, or maintain the prices of NAND Flash

16 Memory at artificial levels resulted in harm to Plaintiffs and the indirect-purchaser consumer

17 class alleged herein because it resulted in them paying higher prices for products containing

18 NAND Flash Memory than they would have in the absence of Defendants' conspiracy.  The

19 entire overcharge for NAND Flash Memory at issue was passed on to Plaintiffs and members

20 of the indirect-purchaser class.

21         148.    NAND Flash Memory is a commodity product, with functionally equivalent

22 products available from the Defendants, which manufacture NAND Flash Memory pursuant

23 to standard specifications and sizes.

24         149.    The NAND Flash Memory market is dominated by a handful of leading

25 manufacturers – namely, Defendants in this case.

26         150.    Defendants operate manufacturing factories called fabrication plants or "fabs".

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1  Those fabrication plants use "wafers" of silicon, onto which are fabricated patterns of

2  semiconductors that form individual NAND memory chips, called "dice."  The dice are tested

3  and the wafers are then cut into individual die.  The fundamental cost structure of Flash

4  Memory is based on the fixed costs for fabs, the cost to produce a semiconductor wafer and

5  the yield of good die from each wafer.

6      151.    NAND Flash Memory is purchased by consumers as an external memory

7  device or as a substantial part of an electronic device.  When NAND Flash Memory is

8  purchased by consumers as an external memory device, the device itself is directly traceable

9  to the specific manufacturing Defendant.  When NAND Flash Memory is purchased by

10  consumer as part of an electronic device, it is a distinct, physically-discrete hardware element

11  of the end-use product and is identifiable by a specific, discrete part or model number that

12  permits tracing.   NAND Flash Memory is identifiable and traceable throughout the chain of

13  the distribution to the end user.  It does not undergo any alterations as it moves through the

14  chain of distribution.

15      152.    The indirect-purchaser buys NAND Flash Memory through one of two

16  distribution chains:  either from the direct purchaser OEM, or through a reseller such as a

17  retailer.

18      153.    Thus, NAND Flash Memory follows a traceable physical chain from the

19  Defendants to the OEMs, to the purchasers of NAND external memory cards, USB drives,

20  and products using NAND flash as a substantial component.  Tracing can help show that

21  changes in the prices paid by direct purchasers of NAND Flash Memory affect prices paid by

22  indirect-purchasers of the Flash Memory itself or products containing Flash Memory.

23      154.    The OEM and the retail markets of NAND Flash Memory are subject to

24  vigorous price competition.  The direct purchaser OEMs and retailers have very thin net

25  margins.  They are therefore at the mercy of their component costs, such that increases in the

26  price of NAND Flash Memory lead to quick, corresponding price increases at the OEM and

27

28

39

1  retail levels for the stand-alone NAND Flash Memory devices and NAND flash-based

2  products.

3        155.    Hence, the inflated prices of NAND Flash Memory resulting from Defendants'

4  price-fixing conspiracy have been passed on to Plaintiffs and the other Class members by

5  direct-purchaser manufacturers, distributors, and retailers.

6        156.    NAND Flash Memory makes up an overwhelming majority of the cost of

7  NAND flash-based memory devices and a substantial portion of the consumer devices in

8  which NAND Flash Memory is packaged to be sold as a component.  For an external flash-

9  based memory device, the retail price is determined by the cost of the NAND Flash Memory

10  it contains.  In those products NAND Flash Memory represents half of the single most

11  expensive components of the consumer device.

12        157.    In retailing, it is common to use a "markup rule."  The retail price is set as the

13  wholesale cost plus a percentage markup designed to recover non-product costs and to

14  provide a profit.  This system guarantees that increases in costs to the retailer will be passed

15  on to end buyers.

16        158.    The economic and legal literature has recognized that unlawful overcharges in

17  a component normally result in higher prices for products containing that price-fixed

18  component.  As Professor Herbert Hovenkamp, a noted antitrust scholar, has stated in his

19  treatise, FEDERAL ANTITRUST POLICY, THE LAW OF COMPETITITON AND ITS

20  PRACTICE (1994) at 624:

21              A monopoly overcharge at the top of a distribution chain
              generally results in higher prices at every level below.  For
22              example if production of aluminum is monopolized or
              cartelized, fabricators of aluminum cookware will pay higher
23              prices for aluminum.  In most cases they will absorb part of
              these increased costs themselves and pass part along to
24              cookware wholesalers.  The wholesalers will charge higher
              prices to the retail stores, and the stores will do it once again to
25              retail consumers.  Every person at every stage in the chain
              likely will be poorer as a result of the monopoly price at the top.
26

27
                                                                        40
28

1

2

> Theoretically, one can calculate the percentage of any
> overcharge that a firm at one distributional level will pass on to
> those at the next level.

3   159.    Similarly, two other antitrust scholars – Professors Robert G. Harris (Professor

4   Emeritus and former Chair of the Business and Public Policy Group at the Haas School of

5   Business at the University of California at Berkeley) and the late Lawrence A. Sullivan

6   (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the

7   Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on

8   monopoly overcharges is not the exception: it is the rule."

9   160.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for

10  Information and Computer Science and Professor of Economics and Public Policy at the

11  University of Michigan), an expert who presented evidence in a number of the indirect-

12  purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial

13  decision in that case granting class certification):

14

15

16

17

18

> As is well known in economic theory and practice, at least some
> of the overcharge will be passed on by distributors to end
> consumers.  When the distribution markets are highly
> competitive, as they are here, all or nearly the entire overcharge
> will be passed on through to ultimate consumers… Both of
> Microsoft's experts also agree upon the economic phenomenon
> of cost pass through, and how it works in competitive markets.
> This general phenomenon of cost pass through is well
> established in antitrust laws and economics as well.

19  161.    Other factors that lead to the pass-through of overcharges include: (i) whether

20  price changes are frequent; (ii) the duration of the anti-competitive overcharge; (iii) whether

21  pricing decisions are based on cost; (iv) whether the overcharge affects variable, as opposed

22  to overhead, costs; (v) whether the resellers' production technology is uniform; (vi) whether

23  the reseller supply curve exhibits a high degree of elasticity; and (vii) whether the demand of

24  the resellers is inelastic.  All of these factors were present in the NAND Flash Memory market

25  during the Class Period.  The precise amount of such an impact on the prices of stand-alone

26  NAND-based products and products containing NAND Flash Memory can be measured and

27  quantified.  Commonly used and well-accepted economic models can be used to measure both

28

41

1   the extent and the amount of the supracompetitive charge passed-through the chain of

2   distribution.

3       162.    Plaintiffs and other indirect-purchasers have been forced to pay

4   supracompetitive prices for the stand-alone NAND Flash Memory products and for products

5   in which NAND Flash Memory is a substantial component.  These inflated prices have been

6   passed on to them by direct-purchaser manufacturers, distributors, and retailers.  Those

7   overcharges have unjustly enriched Defendants.

8                   IX.     **CLASS ACTION ALLEGATIONS**

9       163.    Plaintiffs bring this action on their own behalf and as a class action pursuant to

10  Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following

11  Class (the "Nationwide Class"):

12          All persons and entities currently residing in the United States
            that, from January 1, 1999 until the present, purchased in the
13          United States, NAND Flash Memory indirectly from the
            Defendants for their own use and not for resale.  Specifically
14          excluded from this Class are the Defendants; the officers,
            directors or employees of any Defendant; any entity in which
15          any Defendant has a controlling interest; and any affiliate, legal
            representative, heir or assign of any Defendant.  Also excluded
16          are any federal, state or local governmental entities, any judicial
            officer presiding over this action and the members of his/her
17          immediate family and judicial staff, and any juror assigned to
            this action.
18
        164.    Plaintiffs also bring this action on their own behalf and as a class action
19
    pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s),
20
    on behalf of all members of the following classes (collectively, the "Indirect-Purchaser State
21
    Classes"):
22
                a.      ARIZONA:  All persons and entities in Arizona who indirectly
23
                        purchased NAND Flash Memory manufactured and/or sold by one or
24
                        more of the Defendants for their own use and not for resale during the
25
                        Class Period.  Specifically excluded from this Class are the Defendants;
26
                        the officers, directors or employees of any Defendant; any entity in
27
                                                                                          42
28

1    which any Defendant has a controlling interest; and any affiliate, legal

2    representative, heir or assign of any Defendant. Also excluded are any

3    federal, state or local governmental entities, any judicial officer

4    presiding over this action and the members of his/her immediate family

5    and judicial staff, and any juror assigned to this action (the "Arizona

6    Indirect-Purchaser Class").

7    b.    ARKANSAS: All persons and entities in Arkansas who indirectly

8    purchased NAND Flash Memory manufactured and/or sold by one or

9    more of the Defendants for their own use and not for resale during the

10    Class Period. Specifically excluded from this Class are the Defendants;

11    the officers, directors or employees of any Defendant; any entity in

12    which any Defendant has a controlling interest; and any affiliate, legal

13    representative, heir or assign of any Defendant. Also excluded are any

14    federal, state or local governmental entities, any judicial officer

15    presiding over this action and the members of his/her immediate family

16    and judicial staff, and any juror assigned to this action (the "Arkansas

17    Indirect-Purchaser Class").

18    c.    CALIFORNIA: All persons and entities in California who indirectly

19    purchased NAND Flash Memory manufactured and/or sold by one or

20    more of the Defendants for their own use and not for resale during the

21    Class Period. Specifically excluded from this Class are the Defendants;

22    the officers, directors or employees of any Defendant; any entity in

23    which any Defendant has a controlling interest; and any affiliate, legal

24    representative, heir or assign of any Defendant. Also excluded are any

25    federal, state or local governmental entities, any judicial officer

26    presiding over this action and the members of his/her immediate family

27

28

43

1          and judicial staff, and any juror assigned to this action (the "California

2          Indirect-Purchaser Class").

3      d.    DISTRICT OF COLUMBIA:  All persons and entities in the District of

4          Columbia who indirectly purchased NAND Flash Memory

5          manufactured and/or sold by one or more of the Defendants for their

6          own use and not for resale during the Class Period.  Specifically

7          excluded from this Class are the Defendants; the officers, directors or

8          employees of any Defendant; any entity in which any Defendant has a

9          controlling interest; and any affiliate, legal representative, heir or assign

10         of any Defendant.  Also excluded are any federal, state or local

11         governmental entities, any judicial officer presiding over this action

12         and the members of his/her immediate family and judicial staff, and

13         any juror assigned to this action (the "District of Columbia Indirect-

14         Purchaser Class").

15     e.    FLORIDA:  All persons and entities in Florida who indirectly

16         purchased NAND Flash Memory manufactured and/or sold by one or

17         more of the Defendants for their own use and not for resale during the

18         Class Period.  Specifically excluded from this Class are the Defendants;

19         the officers, directors or employees of any Defendant; any entity in

20         which any Defendant has a controlling interest; and any affiliate, legal

21         representative, heir or assign of any Defendant.  Also excluded are any

22         federal, state or local governmental entities, any judicial officer

23         presiding over this action and the members of his/her immediate family

24         and judicial staff, and any juror assigned to this action (the "Florida

25         Indirect-Purchaser Class").

26     f.    IOWA:  All persons and entities in Iowa who indirectly purchased

27

28

44

1    NAND Flash Memory manufactured and/or sold by one or more of the

2    Defendants for their own use and not for resale during the Class Period.

3    Specifically excluded from this Class are the Defendants; the officers,

4    directors or employees of any Defendant; any entity in which any

5    Defendant has a controlling interest; and any affiliate, legal

6    representative, heir or assign of any Defendant.  Also excluded are any

7    federal, state or local governmental entities, any judicial officer

8    presiding over this action and the members of his/her immediate family

9    and judicial staff, and any juror assigned to this action (the "Iowa

10   Indirect-Purchaser Class").

11   g.    KANSAS:  All persons and entities in Kansas who indirectly purchased

12         NAND Flash Memory manufactured and/or sold by one or more of the

13         Defendants for their own use and not for resale during the Class Period.

14         Specifically excluded from this Class are the Defendants; the officers,

15         directors or employees of any Defendant; any entity in which any

16         Defendant has a controlling interest; and any affiliate, legal

17         representative, heir or assign of any Defendant.  Also excluded are any

18         federal, state or local governmental entities, any judicial officer

19         presiding over this action and the members of his/her immediate family

20         and judicial staff, and any juror assigned to this action (the "Kansas

21         Indirect-Purchaser Class").

22   h.    MAINE:  All persons and entities in Maine who indirectly purchased

23         NAND Flash Memory manufactured and/or sold by one or more of the

24         Defendants for their own use and not for resale during the Class Period.

25         Specifically excluded from this Class are the Defendants; the officers,

26         directors or employees of any Defendant; any entity in which any

27

28

45

1    Defendant has a controlling interest; and any affiliate, legal

2    representative, heir or assign of any Defendant.  Also excluded are any

3    federal, state or local governmental entities, any judicial officer

4    presiding over this action and the members of his/her immediate family

5    and judicial staff, and any juror assigned to this action (the "Maine

6    Indirect-Purchaser Class").

7        i.    MASSACHUSETTS:   All persons and entities in Massachusetts who

8    indirectly purchased NAND Flash Memory manufactured and/or sold

9    by one or more of the Defendants for their own use and not for resale

10   during the Class Period.  Specifically excluded from this Class are the

11   Defendants; the officers, directors or employees of any Defendant; any

12   entity in which any Defendant has a controlling interest; and any

13   affiliate, legal representative, heir or assign of any Defendant.  Also

14   excluded are any federal, state or local governmental entities, any

15   judicial officer presiding over this action and the members of his/her

16   immediate family and judicial staff, and any juror assigned to this

17   action (the "Massachusetts Indirect-Purchaser Class").

18       j.    MICHIGAN: All persons and entities in Michigan who indirectly

19   purchased NAND Flash Memory manufactured and/or sold by one or

20   more of the Defendants for their own use and not for resale during the

21   Class Period.  Specifically excluded from this Class are the Defendants;

22   the officers, directors or employees of any Defendant; any entity in

23   which any Defendant has a controlling interest; and any affiliate, legal

24   representative, heir or assign of any Defendant.  Also excluded are any

25   federal, state or local governmental entities, any judicial officer

26   presiding over this action and the members of his/her immediate family

27

28

46

1    and judicial staff, and any juror assigned to this action (the "Michigan

2    Indirect-Purchaser Class").

3    k.    MINNESOTA:  All persons and entities in Minnesota who indirectly

4    purchased NAND Flash Memory manufactured and/or sold by one or

5    more of the Defendants for their own use and not for resale during the

6    Class Period.  Specifically excluded from this Class are the Defendants;

7    the officers, directors or employees of any Defendant; any entity in

8    which any Defendant has a controlling interest; and any affiliate, legal

9    representative, heir or assign of any Defendant.  Also excluded are any

10    federal, state or local governmental entities, any judicial officer

11    presiding over this action and the members of his/her immediate family

12    and judicial staff, and any juror assigned to this action (the "Minnesota

13    Indirect-Purchaser Class").

14    l.    NEW HAMPSHIRE:  All persons and entities in New Hampshire who

15    indirectly purchased NAND Flash Memory manufactured and/or sold

16    by one or more of the Defendants for their own use and not for resale

17    during the Class Period.  Specifically excluded from this Class are the

18    Defendants; the officers, directors or employees of any Defendant; any

19    entity in which any Defendant has a controlling interest; and any

20    affiliate, legal representative, heir or assign of any Defendant.  Also

21    excluded are any federal, state or local governmental entities, any

22    judicial officer presiding over this action and the members of his/her

23    immediate family and judicial staff, and any juror assigned to this

24    action (the "New Hampshire Indirect-Purchaser Class").

25    m.    NEW MEXICO:  All persons and entities in New Mexico who

26    indirectly purchased NAND Flash Memory manufactured and/or sold

27

28

47

1     by one or more of the Defendants for their own use and not for resale

2     during the Class Period.  Specifically excluded from this Class are the

3     Defendants; the officers, directors or employees of any Defendant; any

4     entity in which any Defendant has a controlling interest; and any

5     affiliate, legal representative, heir or assign of any Defendant.  Also

6     excluded are any federal, state or local governmental entities, any

7     judicial officer presiding over this action and the members of his/her

8     immediate family and judicial staff, and any juror assigned to this

9     action (the "New Mexico Indirect-Purchaser Class").

10     n.     NEW YORK:  All persons and entities in New York who indirectly

11     purchased NAND Flash Memory manufactured and/or sold by one or

12     more of the Defendants for their own use and not for resale during the

13     Class Period.  Specifically excluded from this Class are the Defendants;

14     the officers, directors or employees of any Defendant; any entity in

15     which any Defendant has a controlling interest; and any affiliate, legal

16     representative, heir or assign of any Defendant.  Also excluded are any

17     federal, state or local governmental entities, any judicial officer

18     presiding over this action and the members of his/her immediate family

19     and judicial staff, and any juror assigned to this action (the "New York

20     Indirect-Purchaser Class").

21     o.     NORTH CAROLINA:  All persons and entities in North Carolina who

22     indirectly purchased NAND Flash Memory manufactured and/or sold

23     by one or more of the Defendants for their own use and not for resale

24     during the Class Period.  Specifically excluded from this Class are the

25     Defendants; the officers, directors or employees of any Defendant; any

26     entity in which any Defendant has a controlling interest; and any

27

28

48

1     affiliate, legal representative, heir or assign of any Defendant.  Also

2     excluded are any federal, state or local governmental entities, any

3     judicial officer presiding over this action and the members of his/her

4     immediate family and judicial staff, and any juror assigned to this

5     action (the "North Carolina Indirect-Purchaser Class").

6     p.    RHODE ISLAND:  All persons and entities in Rhode Island who

7           indirectly purchased NAND Flash Memory manufactured and/or sold

8           by one or more of the Defendants for their own use and not for resale

9           during the Class Period.  Specifically excluded from this Class are the

10          Defendants; the officers, directors or employees of any Defendant; any

11          entity in which any Defendant has a controlling interest; and any

12          affiliate, legal representative, heir or assign of any Defendant.  Also

13          excluded are any federal, state or local governmental entities, any

14          judicial officer presiding over this action and the members of his/her

15          immediate family and judicial staff, and any juror assigned to this

16          action (the "Rhode Island Indirect-Purchaser Class").

17    q.    SOUTH DAKOTA:  All persons and entities in South Dakota who

18          indirectly purchased NAND Flash Memory manufactured and/or sold

19          by one or more of the Defendants for their own use and not for resale

20          during the Class Period.  Specifically excluded from this Class are the

21          Defendants; the officers, directors or employees of any Defendant; any

22          entity in which any Defendant has a controlling interest; and any

23          affiliate, legal representative, heir or assign of any Defendant.  Also

24          excluded are any federal, state or local governmental entities, any

25          judicial officer presiding over this action and the members of his/her

26          immediate family and judicial staff, and any juror assigned to this

27

28

49

1    action (the "South Dakota Indirect-Purchaser Class").

2    r.    TENNESSEE: All persons and entities in Tennessee who indirectly

3    purchased NAND Flash Memory manufactured and/or sold by one or

4    more of the Defendants for their own use and not for resale during the

5    Class Period.  Specifically excluded from this Class are the Defendants;

6    the officers, directors or employees of any Defendant; any entity in

7    which any Defendant has a controlling interest; and any affiliate, legal

8    representative, heir or assign of any Defendant.  Also excluded are any

9    federal, state or local governmental entities, any judicial officer

10    presiding over this action and the members of his/her immediate family

11    and judicial staff, and any juror assigned to this action (the "Tennessee

12    Indirect-Purchaser Class").

13    s.    WEST VIRGINIA:  All persons and entities in West Virginia who

14    indirectly purchased NAND Flash Memory manufactured and/or sold

15    by one or more of the Defendants for their own use and not for resale

16    during the Class Period.  Specifically excluded from this Class are the

17    Defendants; the officers, directors or employees of any Defendant; any

18    entity in which any Defendant has a controlling interest; and any

19    affiliate, legal representative, heir or assign of any Defendant.  Also

20    excluded are any federal, state or local governmental entities, any

21    judicial officer presiding over this action and the members of his/her

22    immediate family and judicial staff, and any juror assigned to this

23    action (the "West Virginia Indirect-Purchaser Class").

24    t.    WISCONSIN:  All persons and entities in Wisconsin who indirectly

25    purchased NAND Flash Memory manufactured and/or sold by one or

26    more of the Defendants for their own use and not for resale during the

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    Class Period.  Specifically excluded from this Class are the Defendants;

2    the officers, directors or employees of any Defendant; any entity in

3    which any Defendant has a controlling interest; and any affiliate, legal

4    representative, heir or assign of any Defendant.  Also excluded are any

5    federal, state or local governmental entities, any judicial officer

6    presiding over this action and the members of his/her immediate family

7    and judicial staff, and any juror assigned to this action (the "Wisconsin

8    Indirect-Purchaser Class").

9    165.    Plaintiffs do not know the exact size of the Classes at the present time.

10   However, Plaintiffs believe that due to the nature of the trade and commerce involved, there

11   are at least thousands in each separate state class, and hundreds of thousands of class

12   members geographically dispersed throughout the United States, such that joinder of all class

13   members would be impracticable.

14   166.    Plaintiffs' claims are typical of the claims of their respective Classes, and

15   Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs' interests

16   are coincident with, and not antagonistic to, those of the members of their respective Classes.

17   Plaintiffs have retained competent counsel experienced in class action and complex antitrust

18   and consumer protection litigation.

19   167.    Common questions of law and fact exist, including:

20   a.    Whether Defendants and their co-conspirators engaged in a contract,

21   combination or conspiracy among themselves to fix, raise, maintain or

22   stabilize the process of, or allocate the market of NAND Flash Memory

23   sold in the United States;

24   b.    The duration and extent of the contract, combination or conspiracy;

25   c.    Whether the Defendants and their co-conspirators were participants in

26   the contracts, combinations or conspiracies alleged herein;

27

28

51

1        d.    Whether Defendants and their co-conspirators engaged in conduct that

2             violated Section 1 of the Sherman Act;

3        e.    Whether Defendants and their co-conspirators engaged in unlawful,

4             unfair or deceptive contracts, combinations or conspiracies among

5             themselves, express or implied, to fix, raise, maintain, or stabilize

6             prices of NAND Flash Memory sold in and/or distributed in the United

7             States;

8        f.    Whether the Defendants and their co-conspirators engaged in conduct

9             in violation of the antitrust, consumer protection, unfair trade, and/or

10           deceptive trade practices laws of the various Indirect-Purchaser States

11           as alleged below;

12       g.    Whether the anticompetitive conduct of the Defendants and their co-

13           conspirators caused prices of NAND Flash Memory to be artificially

14           inflated to non-competitive levels;

15       h.    Whether the Defendants and their co-conspirators unjustly enriched

16           themselves as a result of their inequitable conduct at the expense of the

17           members of the Classes;

18       i.    Whether Defendants and their co-conspirators fraudulently concealed

19           the existence of their unlawful conduct;

20       j.    Whether Plaintiffs and the Classes are entitled to injunctive relief; and

21       k.    Whether Plaintiffs and other members of the Indirect-Purchaser Classes

22           were injured by the conduct of Defendants and, if so, the appropriate

23           measure of damages for each of the Classes.

24     168.    These and other questions of law and fact are common to the Classes and

25 predominate over any questions affecting only individual class members, including legal and

26 factual issues relating to liability, damages, and restitution.

27

28

169.    Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

    a.    It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

    b.    It would be virtually impossible for all members of the Classes to intervene as parties-Plaintiff in this action;

    c.    It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;

    d.    It is appropriate for treatment on a fluid recovery basis, which obviates any manageability problems; and

    e.    It will provide court oversight of the claims process, once Defendants' liability is adjudicated.

170.    The named Plaintiffs will fairly and adequately protect the interests of the Class in that the named Plaintiffs have no interests antagonistic to the interests of the other members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust cases to represent themselves and the Class.

171.    This case is also appropriate for certification as a class action because the Defendants have acted and refused to act on grounds generally applicable to the Class, so that final injunctive relief will be appropriate with respect to the Class as a whole.

172.    The claims asserted herein are also appropriate for class certification under the laws of the State of California and of each of the other states under which claims are asserted.

## X.    FRAUDULENT CONCEALMENT

173.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiffs.  Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the

53

1  confines of their higher-level executives.  Defendants and their co-conspirators publicly

2  provided pre-textual and false justifications regarding their prices, including repeatedly and

3  falsely attributing price increases to increased demand, increased costs, product shortages, and

4  lack of manufacturing capacity, which justifications were made to the general public in press

5  releases, comments to the press, annual reports, and other public filings..  Defendants and

6  their co-conspirators concealed the true nature of their unlawful conduct and acts in

7  furtherance thereof, and actively concealed their activities through various other means and

8  methods to avoid detection.  Plaintiffs did not discover, and could not have discovered

9  through the exercise of reasonable diligence, that Defendants and their co-conspirators were

10  violating the antitrust laws as alleged herein until shortly before this class action litigation was

11  commenced.

12      174.    As a result of the active concealment of the conspiracy by Defendants and their

13  co-conspirators, any and all applicable statutes of limitations otherwise applicable to the

14  allegations herein have been tolled.

15                     **XI.     VIOLATIONS ALLEGED**

16                       **First Claim for Relief**

17                  **(Violation of Section 1 of the Sherman Act)**

18      175.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

19  every allegation set forth in the preceding paragraphs of this Complaint.

20      176.    Beginning at a time currently unknown to Plaintiffs, but at least as early as

21  January 1, 1999, and continuing thereafter up to the present, Defendants and their co-

22  conspirators entered into a continuing agreement, understanding, and conspiracy in restraint

23  of trade to artificially raise, fix, maintain, and/or stabilize prices for NAND Flash Memory in

24  the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

25      177.    Defendants' and their co-conspirators' activities as alleged herein were within

26  the flow of, were intended to, and did have a substantial effect on the foreign and interstate

27  commerce of the United States.

28

1    178.    In entering into and conducting the conspiracy as agreed, Defendants and their

2  co-conspirators committed the acts they agreed to commit, including those specifically set

3  forth herein and additional acts and conduct in furtherance of the conspiracy, with the specific

4  goals and intent of:

5         a.    Fixing, raising, and maintaining the price of NAND Flash Memory;

6         b.    Allocating among themselves markets for NAND Flash Memory;

7         c.    Submitting rigged bids in order to secure and carry out certain NAND

8               Flash Memory contracts; and

9         d.    Allocating among themselves the production of NAND Flash Memory.

10    179.    The combination and conspiracy alleged herein has had the following effects,

11  among others:

12         a.    Restraint, suppression, and/or elimination of price competition in the

13               sale of NAND Flash Memory in the United States;

14         b.    The raising, fixing, maintenance, and stabilization of prices at

15               artificially high and non-competitive levels for NAND Flash Memory

16               sold by Defendants and their co-conspirators in the United States; and

17         c.    The denial to consumers of NAND Flash Memory products of the

18               benefits of competition.

19    180.    Plaintiffs and other Nationwide Class members have been injured and will

20  continue to be injured in their businesses and property by paying more for NAND Flash

21  Memory purchased indirectly from the Defendants and their co-conspirators than they would

22  have paid and will pay in the absence of the combination and conspiracy, including paying

23  more for NAND Flash Memory cards, USB storage devices, flash-based digital media

24  players, and higher-end mobile wireless devices in which NAND Flash Memory is a

25  substantial component as a result of higher prices paid for NAND Flash Memory by the

26  manufacturers of those products.

27

28

1    181.    Plaintiffs and the Nationwide Class are entitled to an injunction against

2    Defendants, preventing and restraining the violations alleged herein.

3    **Second Claim for Relief**

4    **(Unjust Enrichment and Disgorgement of Profits)**

5    182.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

6    every allegation set forth in the preceding paragraphs of this Complaint.

7    183.    Defendants have been unjustly enriched through overpayments by Plaintiffs

8    and class members and the resulting profits.

9    184.    Under common law principles of unjust enrichment, Defendants should not be

10    permitted to retain the benefits conferred via overpayments by Plaintiffs and class members.

11    185.    Plaintiffs and members of the following Indirect-Purchaser State Classes seek

12    disgorgement of all profits resulting from such overpayments and establishment of a

13    constructive trust from which Plaintiffs and class members may seek restitution:

14    Arizona Indirect-Purchaser Class;

15    Arkansas Indirect-Purchaser Class;

16    California Indirect-Purchaser Class;

17    District of Columbia Indirect-Purchaser Class;

18    Florida Indirect-Purchaser Class;

19    Iowa Indirect-Purchaser Class;

20    Kansas Indirect-Purchaser Class;

21    Maine Indirect-Purchaser Class;

22    Massachusetts Indirect-Purchaser Class;

23    Michigan Indirect-Purchaser Class;

24    Minnesota Indirect-Purchaser Class;

25    New Hampshire Indirect-Purchaser Class;

26    New Mexico Indirect-Purchaser Class;

27

28
INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1  New York Indirect-Purchaser Class;

2  North Carolina Indirect-Purchaser Class;

3  Rhode Island Indirect-Purchaser Class;

4  South Dakota Indirect-Purchaser Class;

5  Tennessee Indirect-Purchaser Class;

6  West Virginia Indirect-Purchaser Class; and

7  Wisconsin Indirect-Purchaser Class.

8  <u>**Third Claim for Relief**</u>

9  **(Violation of State Antitrust and Unfair Competition Laws)**

10  186. Plaintiffs incorporate and reallege, as though fully set forth herein, each and

11 every allegation set forth in the preceding paragraphs of this Complaint.

12  187. Plaintiffs and members of the Arizona Indirect-Purchaser Class incorporate

13 and reallege each and every allegation set forth in the preceding paragraph of this Complaint.

14   a. Defendants' combination or conspiracies had the following effects:  (1)

15    NAND Flash Memory price competition was restrained, suppressed,

16    and eliminated throughout Arizona; (2) NAND Flash Memory prices

17    were raised, fixed, maintained and stabilized at artificially high levels

18    throughout Arizona; (3) Plaintiffs and members of the Arizona Indirect-

19    Purchaser Class were deprived of free and open competition, and (4)

20    Plaintiffs and members of the Arizona Indirect-Purchaser Class paid

21    supracompetitive, artificially inflated prices for NAND Flash Memory.

22   b. During the Class Period, Defendants' illegal conduct substantially

23    affected Arizona commerce.

24   c. As a direct and proximate result of Defendants' unlawful conduct,

25    Plaintiffs and members of the Arizona Indirect-Purchaser Class have

26    been injured in their business and property and are threatened with

27

28

1 further injury.

2   d. By reason of the foregoing, Defendants have entered into agreements in

3     restrain of trade in violation of Arizona Revised Stat. §§44-1401 *et seq.*

4     Accordingly, Plaintiffs and all members of the Arizona Indirect-

5     Purchaser Class seek all forms of relief available under Arizona

6     Revised Stat. §§44-1401 *et seq.*

7   188. Plaintiffs and members of the California Indirect-Purchaser Class incorporate

8 and reallege, as though fully set forth herein, each and every allegation set forth in the

9 preceding paragraph of this Complaint.

10   a. Defendants' contract, combination, trust or conspiracy was entered

11     into, carried out, effectuated and perfected mainly within the State of

12     California, and Defendants' conduct within California injured all

13     members of the Class.  Therefore, this claim for relief under California

14     law is brought on behalf of the California Indirect-Purchaser Class.

15   b. Beginning at a time currently unknown to California Plaintiffs, but at

16     least as early as January 1, 1999, and continuing thereafter up to the

17     present, Defendants and their co-conspirators entered into and engaged

18     in a continuing unlawful trust in restraint of the trade and commerce

19     described above in violation of Section 16720, California Business and

20     Professions Code.  Defendants, and each of them, have acted in

21     violation of Section 16720 to fix, raise, stabilize, and maintain prices

22     of, and allocate markets for, NAND Flash Memory and NAND Flash

23     Memory products at supracompetitive levels.

24   c. The aforesaid violations of Section 16720, California Business and

25     Professions Code, consisted, without limitation, of a continuing

26     unlawful trust and concert of action among the Defendants and their co-

27

28

58

1    conspirators, the substantial terms of which were to fix, raise, maintain,

2    and stabilize the prices of, and to allocate markets for, NAND Flash

3    Memory and NAND Flash Memory products.

4    d.    For the purpose of forming and effectuating the unlawful trust, the

5    Defendants and their co-conspirators have done those things which they

6    combined and conspired to do, including but not limited to the acts,

7    practices and course of conduct set forth above and the following:  (1)

8    Fixing, raising, maintaining and stabilizing the price of NAND Flash

9    Memory; and (2) Allocating among themselves the production of

10    NAND Flash Memory.

11    e.    The combination and conspiracy alleged herein has had, *inter alia*, the

12    following effects:  (1) Price competition in the sale of NAND Flash

13    Memory and NAND Flash Memory products has been restrained,

14    suppressed, and/or eliminated in the State of California; (2) Prices for

15    NAND Flash Memory and NAND Flash Memory products sold by

16    Defendants and their co-conspirators have been fixed, raised, stabilized,

17    and maintained at artificially high, non-competitive levels in the State

18    of California; and (3) Those who purchased NAND Flash Memory and

19    NAND Flash Memory products directly or indirectly from Defendants

20    and their co-conspirators have been deprived of the benefit of free and

21    open competition.

22    f.    As a direct and proximate result of Defendants' unlawful conduct,

23    California Plaintiffs and the members of the California Indirect-

24    Purchaser Class have been injured in their business and property in that

25    they paid more for NAND Flash Memory products than they otherwise

26    would have paid in the absence of Defendants' unlawful conduct.  As a

27

28
                                                                    59

1       result of Defendants' violation of Section 16720 of the California

2       Business and Professions Code, California Plaintiffs and the California

3       Indirect-Purchaser Class seek treble damages and their cost of suit,

4       including a reasonable attorney's fee, pursuant to Section 16750(a) of

5       the California Business and Professions Code.

6   189.  Plaintiffs and members of the District of Columbia Indirect-Purchaser Class

7 incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

8 Complaint.

9      a.  Defendants' combination or conspiracies had the following effects:  (1)

10       NAND Flash Memory price competition was restrained, suppressed,

11       and eliminated throughout the District of Columbia; (2) NAND Flash

12       Memory prices were raised, fixed, maintained and stabilized at

13       artificially high levels throughout the District of Columbia; (3)

14       Plaintiffs and members of the District of Columbia Indirect-Purchaser

15       Class were deprived of free and open competition, and (4) Plaintiffs

16       and members of the District of Columbia Indirect-Purchaser Class paid

17       supracompetitive, artificially inflated prices for NAND Flash Memory.

18      b.  During the Class Period, Defendants' illegal conduct substantially

19       affected District of Columbia commerce.

20      c.  As a direct and proximate result of Defendants' unlawful conduct,

21       Plaintiffs and members of the District of Columbia Indirect-Purchaser

22       Class have been injured in their business and property and are

23       threatened with further injury.

24      d.  By reason of the foregoing, Defendants have entered into agreements in

25       restraint of trade in violation of District of Columbia Code Ann. §§28-

26       4502 *et seq.*  Accordingly, Plaintiffs and all members of the District of

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1     Columbia Indirect-Purchaser Class seek all forms of relief available

2     under District of Columbia Code Ann. §§28-4502 *et seq.*

3     190.     Plaintiffs and members of the Iowa Indirect-Purchaser Class incorporate and

4     realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

5     a.     Defendants' combination or conspiracies had the following effects:  (1)

6     NAND Flash Memory price competition was restrained, suppressed,

7     and eliminated throughout Iowa; (2) NAND Flash Memory prices were

8     raised, fixed, maintained and stabilized at artificially high levels

9     throughout Iowa; (3)  Plaintiffs and members of the Iowa Indirect-

10    Purchaser Class were deprived of free and open competition, and (4)

11    Plaintiffs and members of the Iowa Indirect-Purchaser Class paid

12    supracompetitive, artificially inflated prices for NAND Flash Memory.

13    b.     During the Class Period, Defendants' illegal conduct substantially

14    affected Iowa commerce.

15    c.     As a direct and proximate result of Defendants' unlawful conduct,

16    Plaintiffs and members of the Iowa Indirect-Purchaser Class have been

17    injured in their business and property and are threatened with further

18    injury.

19    d.     By reason of the foregoing, Defendants have entered into agreements in

20    restraint of trade in violation of Iowa Code §§553.1 *et seq.*

21    Accordingly, Plaintiffs and all members of the Iowa Indirect-Purchaser

22    Class seek all forms of relief available under Iowa Code §§553.1 *et seq.*

23    191.     Plaintiffs and members of the Kansas Indirect-Purchaser Class incorporate and

24    realleage each and every allegation set forth in the preceding paragraphs of this Complaint.

25    a.     Defendants' combination or conspiracies had the following effects:  (1)

26    NAND Flash Memory price competition was restrained, suppressed,

27

28

61

and eliminated throughout Kansas; (2) NAND Flash Memory prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Kansas Indirect-Purchaser Class were deprived of free and open competition, and (4) Plaintiffs and members of the Kansas Indirect-Purchaser Class paid supracompetitive, artificially inflated prices for NAND Flash Memory.

b.    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Kansas Indirect-Purchaser Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq.* Accordingly, Plaintiffs and all members of the Kansas Indirect-Purchaser Class seek all forms of relief under Kansas Stat. Ann. §§50-101 *et seq.*

192.    Plaintiffs and members of the Maine Indirect-Purchaser Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

a.    Defendants' combination or conspiracies had the following effects: (1) NAND Flash Memory price competition was restrained, suppressed, and eliminated throughout Maine; (2) NAND Flash Memory prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Maine Indirect-Purchaser Class were deprived of free and open competition, and (4) Plaintiffs and members of the Maine Indirect-Purchaser Class paid

62

1    supracompetitive, artificially inflated prices for NAND Flash Memory.

2        b.    During the Class Period, Defendants' illegal conduct substantially

3        affected Maine commerce.

4        c.    As a direct and proximate result of Defendants' unlawful conduct,

5        Plaintiffs and members of the Maine Indirect-Purchaser Class have

6        been injured in their business and property and are threatened with

7        further injury.

8        d.    By reason of the foregoing, Defendants have entered into agreements in

9        restraint of trade in violation of Maine Rev. Stat. Ann. tit. 10, §§1101 *et*

10        *seq.*  Accordingly, Plaintiffs and all members of the Maine Indirect-

11        Purchaser Class seek all forms of relief available under Maine Rev.

12        Stat. Ann. tit. 10, §§1101 *et seq.*

13        193.    Plaintiffs and members of the Michigan Indirect-Purchaser Class incorporate

14    and reallege each and every allegation set forth in the preceding paragraph of this Complaint.

15        a.    Defendants' combination or conspiracies had the following effects:  (1)

16        NAND Flash Memory price competition was restrained, suppressed,

17        and eliminated throughout Michigan; (2) NAND Flash Memory prices

18        were raised, fixed, maintained and stabilized at artificially high levels

19        throughout Michigan; (3)  Plaintiffs and members of the Michigan

20        Indirect-Purchaser Class were deprived of free and open competition,

21        and (4) Plaintiffs and members of the Michigan Indirect-Purchaser

22        Class paid supracompetitive, artificially inflated prices for NAND

23        Flash Memory.

24        b.    During the Class Period, Defendants' illegal conduct substantially

25        affected Michigan commerce.

26        c.    As a direct and proximate result of Defendants' unlawful conduct,

27

28

63

1      Plaintiffs and members of the Michigan Indirect-Purchaser Class have

2      been injured in their business and property and are threatened with

3      further injury.

4      d.      By reason of the foregoing, Defendants have entered into agreements in

5              restraint of trade in violation of Michigan Comp. Laws. Ann.

6              §§445.771 *et seq.*  Accordingly, Plaintiffs and all members of the

7              Michigan Indirect-Purchaser Class seek all relief available under

8              Michigan Comp. Laws. Ann. §§445.771 *et seq.*

9      194.    Plaintiffs and members of the Minnesota Indirect-Purchaser Class incorporate

10     and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

11     a.      Defendants' combination or conspiracies had the following effects:  (1)

12             NAND Flash Memory price competition was restrained, suppressed,

13             and eliminated throughout Minnesota; (2) NAND Flash Memory prices

14             were raised, fixed, maintained and stabilized at artificially high levels

15             throughout Minnesota; (3)  Minnesota Plaintiffs and members of the

16             Minnesota Indirect-Purchaser Class were deprived of free and open

17             competition, and (4) Minnesota Plaintiffs and members of the

18             Minnesota Indirect-Purchaser Class paid supracompetitive, artificially

19             inflated prices for NAND Flash Memory.

20     b.      During the Class Period, Defendants' illegal conduct substantially

21             affected Minnesota commerce.

22     c.      As a direct and proximate result of Defendants' unlawful conduct,

23             Minnesota Plaintiffs and members of the Minnesota Indirect-Purchaser

24             Class have been injured in their business and property and are

25             threatened with further injury.

26     d.      By reason of the foregoing, Defendants have entered into agreements in

27

28

64

1     restraint of trade in violation of Minnesota Stat. §§325D.51 *et seq.*

2     Accordingly, Minnesota Plaintiffs and all members of the Minnesota

3     Indirect-Purchaser Class seek all relief available under Minnesota Stat.

4     §§325D.51 *et seq.*

5

6     195.     Plaintiffs and members of the New Mexico Indirect-Purchaser Class

7     incorporate and reallege each and every allegation set forth in the preceding paragraph of this

8     Complaint.

9            a.     Defendants' combination or conspiracies had the following effects:  (1)

10     NAND Flash Memory price competition was restrained, suppressed,

11     and eliminated throughout New Mexico; (2) NAND Flash Memory

12     prices were raised, fixed, maintained and stabilized at artificially high

13     levels throughout New Mexico; (3) Plaintiffs and members of the New

14     Mexico Indirect-Purchaser Class were deprived of free and open

15     competition, and (4) Plaintiffs and members of the New Mexico

16     Indirect-Purchaser Class paid supracompetitive, artificially inflated

17     prices for NAND Flash Memory.

18            b.     During the Class Period, Defendants' illegal conduct substantially

19     affected New Mexico commerce.

20            c.     As a direct and proximate result of Defendants' unlawful conduct,

21     Plaintiffs and members of the New Mexico Indirect-Purchaser Class

22     have been injured in their business and property and are threatened with

23     further injury.

24            d.     By reason of the foregoing, Defendants have entered into agreements in

25     restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 *et*

26     *seq.*  Accordingly, Plaintiffs and the New Mexico Indirect-Purchaser

27

28

65

1    Class seek all relief available under New Mexico Stat. Ann. §§57-1-1 *et*

2    *seq.*

3    196.    Plaintiffs and members of the North Carolina Indirect-Purchaser Class

4    incorporate and reallege each and every allegation set forth in the preceding paragraph of this

5    Complaint.

6       a.    Defendants' combination or conspiracies had the following effects:  (1)

7            NAND Flash Memory price competition was restrained, suppressed,

8            and eliminated throughout North Carolina; (2) NAND Flash Memory

9            prices were raised, fixed, maintained and stabilized at artificially high

10           levels throughout North Carolina; (3) Plaintiffs and members of the

11           North Carolina Indirect-Purchaser Class were deprived of free and open

12           competition, and (4) Plaintiffs and members of the North Carolina

13           Indirect-Purchaser Class paid supracompetitive, artificially inflated

14           prices for NAND Flash Memory.

15      b.    During the Class Period, Defendants' illegal conduct substantially

16           affected North Carolina commerce.

17      c.    As a direct and proximate result of Defendants' unlawful conduct,

18           Plaintiffs and members of the North Carolina Indirect-Purchaser Class

19           have been injured in their business and property and are threatened with

20           further injury.

21      d.    By reason of the foregoing, Defendants have entered into agreements in

22           restraint of trade in violation of North Carolina Gen. Stat. §§75-1 *et*

23           *seq.*  Accordingly, Plaintiffs and all members of the North Carolina

24           Indirect-Purchaser Class seek all relief available under North Carolina

25           Gen. Stat. §§75-1 *et seq.*

26      197.    Plaintiffs and members of the South Dakota Indirect-Purchaser Class

27

28

66

1   incorporate and reallege each and every allegation set forth in the preceding paragraph of this

2   Complaint.

3             a.      Defendants' combination or conspiracies had the following effects: (1)

4                     NAND Flash Memory price competition was restrained, suppressed,

5                     and eliminated throughout South Dakota; (2) NAND Flash Memory

6                     prices were raised, fixed, maintained and stabilized at artificially high

7                     levels throughout South Dakota; (3) Plaintiffs and members of the

8                     South Dakota Indirect-Purchaser Class were deprived of free and open

9                     competition, and (4) Plaintiffs and members of the South Dakota

10                   Indirect-Purchaser Class paid supracompetitive, artificially inflated

11                   prices for NAND Flash Memory.

12             b.      During the Class Period, Defendants' illegal conduct substantially

13                   affected South Dakota commerce.

14             c.      As a direct and proximate result of Defendants' unlawful conduct,

15                   Plaintiffs and members of the South Dakota Indirect-Purchaser Class

16                   have been injured in their business and property and are threatened with

17                   further injury.

18             d.      By reason of the foregoing, Defendants have entered into agreements in

19                   restraint of trade in violation of South Dakota Codified Laws Ann.

20                   §§37-1 *et seq.* Accordingly, Plaintiffs and all members of the South

21                   Dakota Indirect-Purchaser Class seek all relief available under South

22                   Dakota Codified Laws Ann. §§37-1 *et seq.*

23        198.      Plaintiffs and members of the Tennessee Indirect-Purchaser Class incorporate

24   and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

25             a.      Defendants' combination or conspiracies had the following effects: (1)

26                     NAND Flash Memory price competition was restrained, suppressed,

27

28

1    and eliminated throughout Tennessee; (2) NAND Flash Memory prices

2    were raised, fixed, maintained and stabilized at artificially high levels

3    throughout Tennessee; (3) Plaintiffs and members of the Tennessee

4    Indirect-Purchaser Class were deprived of free and open competition,

5    and (4) Plaintiffs and members of the Tennessee Indirect-Purchaser

6    Class paid supracompetitive, artificially inflated prices for NAND

7    Flash Memory.

8    b.    During the Class Period, Defendants' illegal conduct substantially

9    affected Tennessee commerce.

10    c.    As a direct and proximate result of Defendants' unlawful conduct,

11    Plaintiffs and members of the Tennessee Indirect-Purchaser Class have

12    been injured in their business and property and are threatened with

13    further injury.

14    d.    By reason of the foregoing, Defendants have entered into agreements in

15    restraint of trade in violation of Tennessee Code Ann. §§47-25-101 *et*

16    *seq.*  Accordingly, Plaintiffs and all members of the Tennessee Indirect-

17    Purchaser Class seek all relief available under Tennessee Code Ann.

18    §§47-25-101 *et seq.*

19    199.    Plaintiffs and members of the West Virginia Indirect-Purchaser Class

20    incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

21    Complaint.

22    a.    Defendants' combination or conspiracies had the following effects:  (1)

23    NAND Flash Memory price competition was restrained, suppressed,

24    and eliminated throughout West Virginia; (2) NAND Flash Memory

25    prices were raised, fixed, maintained and stabilized at artificially high

26    levels throughout West Virginia; (3) Plaintiffs and members of the

27

28
INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1    West Virginia Indirect-Purchaser Class were deprived of free and open

2    competition, and (4) Plaintiffs and members of the West Virginia

3    Indirect-Purchaser Class paid supracompetitive, artificially inflated

4    prices for NAND Flash Memory.

5    b.    During the Class Period, Defendants' illegal conduct substantially

6    affected West Virginia commerce.

7    c.    As a direct and proximate result of Defendants' unlawful conduct,

8    Plaintiffs and members of the West Virginia Indirect-Purchaser Class

9    have been injured in their business and property and are threatened with

10    further injury.

11    d.    By reason of the foregoing, Defendants have entered into agreements in

12    restraint of trade in violation of West Virginia §§47-18-1 *et seq.*

13    Accordingly, Plaintiffs and all members of the West Virginia Indirect-

14    Purchaser Class seek all relief available under West Virginia §§47-18-1

15    *et seq.*

16    200.    Plaintiffs and members of the Wisconsin Indirect-Purchaser Class incorporate

17    and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

18    a.    Defendants' combination or conspiracies had the following effects:  (1)

19    NAND Flash Memory price competition was restrained, suppressed,

20    and eliminated throughout Wisconsin; (2) NAND Flash Memory prices

21    were raised, fixed, maintained and stabilized at artificially high levels

22    throughout Wisconsin; (3) Wisconsin Plaintiffs and members of the

23    Wisconsin Indirect-Purchaser Class were deprived of free and open

24    competition, and (4) Wisconsin Plaintiffs and members of the

25    Wisconsin Indirect-Purchaser Class paid supracompetitive, artificially

26    inflated prices for NAND Flash Memory.

27

28

69

1        b.    During the Class Period, Defendants' illegal conduct substantially

2              affected Wisconsin commerce.

3        c.    As a direct and proximate result of Defendants' unlawful conduct,

4              Wisconsin Plaintiffs and members of the Wisconsin Indirect-Purchaser

5              Class have been injured in their business and property and are

6              threatened with further injury.

7        d.    By reason of the foregoing, Defendants have entered into agreements in

8              restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

9              Accordingly, Wisconsin Plaintiffs and all members of the Wisconsin

10             Indirect-Purchaser Class seek all relief available under Wisconsin Stat.

11             §§133.01 *et seq.*

12                  **Fourth Claim for Relief**

13      **(Violation of State Consumer Protection and Unfair Competition Laws)**

14        201.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

15  every allegation set forth in the preceding paragraphs of this Complaint.

16        202.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive

17  or fraudulent acts or practices in violation of the state consumer protection and unfair

18  competition statutes listed below.

19        203.    Plaintiffs and members of the Arkansas Indirect-Purchaser Class incorporate

20  and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

21        a.    The acts and practices of Defendants, as set forth herein, constitute

22              deceptive and unconscionable acts in the conduct of Defendants'

23              business in violation of Arkansas Deceptive Trade Practice Act

24              "ADTPA"), Ark. Code §§4-88-101 *et seq.*

25        b.    Defendants' price-fixing conspiracy could not have succeeded absent

26              deceptive conduct by Defendants to cover up their illegal acts.  Secrecy

27

28                              70

1   was integral to the formation, implementation and maintenance of

2   Defendants' price-fixing conspiracy.  Defendants committed inherently

3   deceptive and self-concealing actions, of which Plaintiffs could not

4   possibly have been aware.  Defendants and their co-conspirators

5   publicly provided pre-textual and false justifications regarding their

6   price increases.  Defendants' public announcements concerning

7   changes in the price of NAND Flash Memory created the illusion of

8   competitive pricing controlled by market forces rather than

9   supracompetitive pricing driven by Defendants' illegal conspiracy.

10   Moreover, Defendants deceptively concealed their unlawful activities

11   by mutually agreeing not to divulge the existence of the conspiracy to

12   outsiders, conducting meetings and conversations in secret, confining

13   the plan to a small group of higher-level officials at each company and

14   avoiding the creation of documents which would reveal the antitrust

15   violations.

16   c.    Defendants' unlawful conduct had the following effects:  (1) NAND

17   Flash Memory price competition was restrained, suppressed, and

18   eliminated throughout Arkansas; (2) NAND Flash Memory prices were

19   raised, fixed, maintained, and stabilized at artificially high levels

20   throughout Arkansas; (3) Arkansas Plaintiffs and members of the

21   Arkansas Indirect-Purchaser Class were deprived of free and open

22   competition; and (4) Arkansas Plaintiffs and members of the Arkansas

23   Indirect-Purchaser Class paid supracompetitive, artificially inflated

24   prices for NAND Flash Memory.

25   d.    As a direct and proximate result of the Defendants' violations of law,

26   Arkansas Plaintiff and members of the Arkansas Indirect-Purchaser

27

28

71

1                Class suffered an ascertainable loss of money or property as a result of

2                Defendants' use or employment of unconscionable and deceptive

3                commercial practices as set forth above.  That loss was caused by

4                Defendants' willful and deceptive conduct, as described herein.

5      e.      Defendants violated the ADTPA under its "catch-all provision," 4-88-

6                107a(10), by engaging in deceptive and unconscionable conduct as

7                described herein.  Defendants' deception, including its affirmative

8                misrepresentations and omissions concerning the price of NAND Flash

9                Memory, likely misled all consumers acting reasonably under the

10              circumstances to believe that they were purchasing NAND Flash

11              Memory at prices borne by a free and fair market.  Defendants'

12              affirmative misrepresentations and omissions constitute information

13              important to Arkansas Plaintiff and the members of the Arkansas

14              Indirect-Purchaser Class as they related to the cost of NAND Flash

15              Memory they purchased

16      f.      Defendants conduct was also "unconscionable" in violation of §4-88-

17                107a(10).  Plaintiffs were not aware of Defendants' price-fixing

18                conspiracy and were therefore unaware that they were being unfairly

19                and illegally overcharged.  There was a gross disparity of bargaining

20              power between the parties with respect to the price charged by

21               Defendants for NAND Flash Memory.  Defendants had the sole power

22              to set that price and Plaintiffs had no power to negotiate a lower price.

23              Moreover, Plaintiffs lacked any meaningful choice in purchasing

24               NAND Flash Memory because they were unaware of the unlawful

25              overcharge and there was no alternative source of supply through

26              which Plaintiffs could avoid the overcharges.  Defendants' conduct

27

28

1          with regard to sales of NAND Flash Memory, including their illegal

2          conspiracy to secretly fix the price of NAND Flash Memory at

3          supracompetitive levels and overcharge consumers, was substantively

4          unconscionable because it was one-sided and unfairly benefited

5          Defendants at the expense of Plaintiffs and the public.  Defendants took

6          grossly unfair advantage of Plaintiffs.  The suppression of competition

7          that has resulted from Defendants' conspiracy has ultimately resulted in

8          unconscionably higher prices for consumers.

9       g.    Defendants have engaged in unfair competition or unfair or deceptive

10          acts or practices in violation of Arkansas Code § 4-88-101, *et seq.*, and,

11          accordingly, Arkansas Plaintiffs and all members of the Arkansas

12          Indirect-Purchaser Class seek all relief available under that statute.

13     204.    Plaintiffs and members of the California Indirect-Purchaser Class incorporate

14 and reallege, as though fully set forth herein, each and every allegation set forth in the

15 preceding paragraph of this Complaint.

16       a.    Defendants' business acts and practices were centered in, carried out,

17          effectuated, and perfected mainly within the State of California, and

18          Defendants' conduct injured all members of the California Indirect-

19          Purchaser Class.  Therefore, this claim for relief under California law is

20          brought on behalf of the California Indirect-Purchaser Class.

21       b.    Beginning on a date unknown to California Plaintiffs, but at least as

22          early as January 1, 1999, and continuing thereafter up to the present,

23          Defendants committed and continue to commit acts of unfair

24          competition, as defined by Sections 17200 *et seq.* of the California

25          Business and Professions Code, by engaging in the acts and practices

26          specified above.

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1        c.    This claim is instituted pursuant to Sections 17203 and 17204 of the

2              California Business and Professions Code, to obtain restitution from

3              these Defendants for acts, as alleged herein, that violated Section 17200

4              of the California Business and Professions Code, commonly known as

5              the California Unfair Competition Law.

6        d.    The Defendants' conduct as alleged herein violated Section 17200.

7              The acts, omissions, misrepresentations, practices and non-disclosures

8              of Defendants, as alleged herein, constituted a common, continuous,

9              and continuing course of conduct of unfair competition by means of

10             unfair, unlawful, and/or fraudulent business acts or practices within the

11             meaning of California Business and Professions Code, §§17200 *et seq.*,

12             including, but not limited to, the following:  (1) the violations of

13             Section 1 of the Sherman Act, as set forth above; (2) the violations of

14             §§16720 *et seq.* of the California Business and Professions Code, set

15             forth above;

16        e.    Defendants' acts, omissions, misrepresentations, practices, and non-

17             disclosures, as described above, whether or not in violation of §§16720

18             *et seq.* of the California Business and Professions Code, and whether or

19             not concerted or independent acts, are otherwise unfair,

20             unconscionable, unlawful or fraudulent;

21        f.    Defendants' acts or practices are unfair to consumers of NAND Flash

22             Memory products in the State of California within the meaning of

23             Section 17200 of the California Business and Professions Code; and

24        g.    Defendants' acts and practices are fraudulent or deceptive within the

25             meaning of Section 17200 of the California Business and Professions

26             Code.

27

28

74

1       h.     California Plaintiffs and each of the California Indirect-Purchaser Class

2              members are entitled to full restitution and/or disgorgement of all

3              revenues, earnings, profits, compensation, and benefits that may have

4              been obtained by Defendants as a result of such business acts or

5              practices.

6       i.      The illegal conduct alleged herein is continuing and there is no

7              indication that Defendants will not continue such activity into the

8              future.

9       j.     The unlawful and unfair business practices of Defendants, and each of

10            them, as described above, have caused and continue to cause California

11            Plaintiffs and the members of the California Indirect-Purchaser Class to

12            pay supracompetitive and artificially-inflated prices for NAND Flash

13            Memory products.  California Plaintiffs and the members of the

14            California Indirect-Purchaser Class suffered injury in fact and lost

15            money or property as a result of such unfair competition.

16       k.    The conduct of Defendants as alleged in this Complaint violates

17            Section 17200 of the California Business and Professions Code.

18       l.     As alleged in this Complaint, Defendants and their co-conspirators

19            have been unjustly enriched as a result of their wrongful conduct and

20            by Defendants' unfair competition.  California Plaintiffs and the

21            members of the California Indirect-Purchaser Class are accordingly

22            entitled to equitable relief including restitution and/or disgorgement of

23            all revenues, earnings, profits, compensation, and benefits that may

24            have been obtained by Defendants as a result of such business

25            practices, pursuant to the California Business and Professions Code,

26            Sections 17203 and 17204.

27

28

1

2          205.    Plaintiffs and members of the Florida Indirect-Purchaser Class incorporate and

3   reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

4                  a.    Defendants' unlawful conduct had the following effects:  (1) NAND

5                        Flash Memory price competition was restrained, suppressed, and

6                        eliminated throughout Florida; (2) NAND Flash Memory prices were

7                        raised, fixed, maintained, and stabilized at artificially high levels

8                        throughout Florida; (3) Plaintiffs and members of the Florida Indirect-

9                        Purchaser Class were deprived of free and open competition; and (4)

10                       Plaintiffs and members of the Florida Indirect-Purchaser Class paid

11                       supracompetitive, artificially inflated prices for NAND Flash Memory.

12                 b.    During the Class Period, Defendants' illegal conduct substantially

13                       affected Florida commerce and consumers.

14                 c.    As a direct and proximate result of Defendants' unlawful conduct,

15                       Plaintiffs and members of the Florida Indirect-Purchaser Class have

16                       been injured and are threatened with further injury.

17                 d.    Defendants have engaged in unfair competition or unfair or deceptive

18                       acts or practices in violation of Florida Stat. §§501.201 *et seq.* and,

19                       accordingly, Plaintiffs and all members of the Florida Indirect-

20                       Purchaser Class seek all relief available under that statute.

21

22          206.    Plaintiffs and members of the Massachusetts Indirect-Purchaser Class

23   incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

24   Complaint.

25                 a.    Defendants were engaged in trade or commerce as defined by G.L. c.

26                       93A.

27

28

76

1         b.     Defendants agreed to, and did in fact, act in restraint of trade or

2                  commerce in a market which includes Massachusetts, by affecting,

3                  fixing, controlling and/or maintaining at artificial and non-competitive

4                  levels, the prices at which NAND Flash Memory was sold, distributed,

5                  or obtained in Massachusetts and took efforts to conceal their

6                  agreements from Plaintiffs and members of the Massachusetts Indirect-

7                  Purchaser Class.

8         c.     Defendants' price-fixing conspiracy could not have succeeded absent

9                  deceptive conduct by Defendants to cover up their illegal acts.  Secrecy

10                 was integral to the formation, implementation and maintenance of

11                 Defendants' price-fixing conspiracy.  Defendants committed inherently

12                 deceptive and self-concealing actions, of which Plaintiffs could not

13                 possibly have been aware.  Defendants and their co-conspirators

14                 publicly provided pre-textual and false justifications regarding their

15                 price increases.  Defendants' public announcements concerning

16                 changes in the price of NAND Flash Memory created the illusion of

17                 competitive pricing controlled by market forces rather than

18                 supracompetitive pricing driven by Defendants' illegal conspiracy.

19                 Moreover, Defendants deceptively concealed their unlawful activities

20                 by mutually agreeing not to divulge the existence of the conspiracy to

21                 outsiders, conducting meetings and conversations in secret, confining

22                 the plan to a small group of higher-level officials at each company and

23                 avoiding the creation of documents which would reveal the antitrust

24                 violations.

25         d.     Defendants' unlawful conduct had the following effects:  (1) NAND

26                 Flash Memory price competition was restrained, suppressed, and

27

28

77

1         eliminated throughout Massachusetts; (2) NAND Flash Memory prices

2         were raised, fixed, maintained, and stabilized at artificially high levels

3         throughout Massachusetts; (3) Plaintiffs and members of the

4         Massachusetts Indirect-Purchaser Class were deprived of free and open

5         competition; and (4) Plaintiffs and members of the Massachusetts

6         Indirect-Purchaser Class paid supracompetitive, artificially inflated

7         prices for NAND Flash Memory.

8     e.     As a direct and proximate result of Defendants' unlawful conduct,

9         Plaintiffs and members of the Massachusetts Indirect-Purchaser Class

10         were injured and are threatened with further injury.

11     f.     Plaintiffs and members of the Massachusetts Indirect-Purchaser Class

12         have complied with, or are excused from complying with the

13         requirements of G.L. c. 93A, § 9.

14     g.     By reason of the foregoing, Defendants engaged in unfair competition

15         and unfair or deceptive acts or practices, in violation of G.L. c. 93A,

16         §2. Defendants' and their co-conspirators' violations of Chapter 93A

17         were knowing or willful, entitling the Plaintiffs and members of the

18         Massachusetts Indirect-Purchaser Class to multiple damages.

19

20     207.     Plaintiffs and members of the New Mexico Indirect-Purchaser Class

21 incorporate and reallege each and every allegation set forth in the preceding paragraph of this

22 Complaint.

23     a.     Defendants agreed to, and did in fact, act in restraint of trade or

24         commerce by affecting, fixing, controlling and/or maintaining at non-

25         competitive and artificially inflated levels, the prices at which NAND

26         Flash Memory was sold, distributed or obtained in New Mexico and

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1      took efforts to conceal their agreements from Plaintiffs and members of

2      the New Mexico Indirect-Purchaser Class.

3      b.    Defendants' price-fixing conspiracy could not have succeeded absent

4      deceptive conduct by Defendants to cover up their illegal acts.  Secrecy

5      was integral to the formation, implementation and maintenance of

6      Defendants' price-fixing conspiracy.  Defendants committed inherently

7      deceptive and self-concealing actions, of which Plaintiffs could not

8      possibly have been aware.  Defendants and their co-conspirators

9      publicly provided pre-textual and false justifications regarding their

10      price increases.  Defendants' public announcements concerning

11      changes in the price of NAND Flash Memory created the illusion of

12      competitive pricing controlled by market forces rather than

13      supracompetitive pricing driven by Defendants' illegal conspiracy.

14      Moreover, Defendants deceptively concealed their unlawful activities

15      by mutually agreeing not to divulge the existence of the conspiracy to

16      outsiders, conducting meetings and conversations in secret, confining

17      the plan to a small group of higher-level officials at each company and

18      avoiding the creation of documents which would reveal the antitrust

19      violations.

20      c.    The aforementioned conduct on the part of the Defendants constituted

21      "unconscionable trade practices," in violation of N.M. Stat. § 57-12-3.

22      Plaintiffs were not aware of Defendants price-fixing conspiracy and

23      were therefore unaware that they were being unfairly and illegally

24      overcharged.  There was a gross disparity of bargaining power between

25      the parties with respect to the price charged by Defendants for NAND

26      Flash Memory.  Defendants had the sole power to set that price and

27

28

79

1    Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs

2    lacked any meaningful choice in purchasing NAND Flash Memory

3    because they were unaware of the unlawful overcharge and there was

4    no alternative source of supply through which Plaintiffs' could avoid

5    the overcharges.  Defendants' conduct with regard to sales of NAND

6    Flash Memory, including their illegal conspiracy to secretly fix the

7    price of NAND Flash Memory at supracompetitive levels and

8    overcharge consumers, was substantively unconscionable because it

9    was one-sided and unfairly benefited Defendants at the expense of

10   Plaintiffs and the public.  Defendants took grossly unfair advantage of

11   Plaintiffs.  The suppression of competition that has resulted from

12   Defendants' conspiracy has ultimately resulted in unconscionably

13   higher prices for consumers so that there was a gross disparity between

14   the price paid and the value received for NAND Flash Memory

15   products.

16   c.    Defendants' unlawful conduct had the following effects:  (1) NAND

17        Flash Memory price competition was restrained, suppressed, and

18        eliminated throughout New Mexico; (2) NAND Flash Memory prices

19        were raised, fixed, maintained, and stabilized at artificially high levels

20        throughout New Mexico; (3) Plaintiffs and members of the New

21        Mexico Indirect-Purchaser Class were deprived of free and open

22        competition; and (4) Plaintiffs and members of the New Mexico

23        Indirect-Purchaser Class paid supracompetitive, artificially inflated

24        prices for NAND Flash Memory.

25   d.    During the Class Period, Defendants' illegal conduct substantially

26        affected New Mexico commerce and consumers.

27

28
                                                                        80

1            e.      As a direct and proximate result of the unlawful conduct of the

2                Defendants, Plaintiffs and members of the New Mexico Indirect-

3                Purchaser Class have been injured and are threatened with further

4                injury.

5            f.      Defendants have engaged in unfair competition or unfair or deceptive

6                acts or practices in violation of New Mexico Stat. §§57-12-1 *et seq.*

7                and, accordingly, Plaintiffs and all members of the New Mexico

8                Indirect-Purchaser Class seek all relief available under that statute.

9     208.    Plaintiffs and members of the New York Indirect-Purchaser Class incorporate

10  and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

11          a.      Defendants engaged in commerce in New York.  During the Class

12               Period, each of the Defendants named herein, directly, or indirectly and

13               through affiliates they dominated and controlled, manufactured, sold

14               and/or distributed NAND Flash Memory in New York.

15          b.      Defendants agreed to, and did in fact, act in restraint of trade or

16               commerce by affecting, fixing, controlling and/or maintaining, at

17               artificial and non-competitive levels, the prices at which NAND Flash

18               Memory was sold, distributed or obtained in New York and took efforts

19               to conceal their agreements from Plaintiffs and the New York Indirect-

20               Purchaser Class.

21          c.      New York consumers were targets of the conspiracy.

22          d.      Defendants and their co-conspirators made public statements about the

23               prices of NAND Flash Memory and products containing NAND Flash

24               Memory that Defendants knew would be seen by New York

25               consumers; such statements either omitted material information that

26               rendered the statements that they made materially misleading or

27

28

INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Master File No. C-07-00086-SBA

1                                      affirmatively misrepresented the real cause of price increases for

2                                      NAND Flash and products containing NAND Flash; and Defendants

3                                      alone possessed material information that was relevant to consumers,

4                                      but failed to provide the information.

5             e.        Because of Defendants' unlawful trade practices in the State of New

6                   York, there was a broad impact on New York consumer class members

7                   who indirectly purchased NAND Flash Memory; and consumer class

8                   members have been injured because have paid more for NAND Flash

9                   Memory than they would have paid in the absence of Defendants'

10                 unlawful trade acts and practices.

11             f.        Because of Defendants' unlawful trade practices in the State of New

12                   York, New York consumer class members who indirectly purchased

13                   NAND Flash Memory were misled to believe that they were paying a

14                   fair price for NAND Flash or the price increases for NAND Flash were

15                   for valid business reasons; and similarly situated consumers were

16                 potentially affected by Defendants' conspiracy.

17             g.       Defendants knew that their unlawful trade practices with respect to

18                   pricing NAND Flash Memory would have an impact on New York

19                 consumers and not just the Defendants' direct customers.

20             h.      Defendants knew that their unlawful trade practices with respect to

21                   pricing NAND Flash Memory would have a broad impact, causing

22                 consumer class members who indirectly purchased NAND Flash to be

23                 injured by paying more for NAND Flash Memory than they would

24                 have paid in the absence of Defendants' unlawful trade acts and

25                 practices.

26             i.        Defendants' consumer-oriented violation adversely affected the public

27

28

1                                 interest in the State of New York.

2                  j.      The conduct of the Defendants described herein constitutes consumer-

3                                 oriented deceptive acts or practices within the meaning of N.Y. Gen.

4                                 Bus. Law § 349.

5                  k.     During the Class Period, Defendants' illegal conduct substantially

6                               affected New York commerce and consumers.

7                  l.      Plaintiffs and members of the New York Indirect-Purchaser Class seek

8                               actual damages for their injuries caused by these violations in an

9                             amount to be determined at trial and are threatened with further injury.

10                           Without prejudice to their contention that Defendants' unlawful

11                           conduct was willful and knowing, Plaintiffs and members of the New

12                           York Indirect-Purchaser Class do not seek in this action to have those

13                           damages trebled pursuant to N.Y. Gen. Bus. Law § 349(h).

14     209.    Plaintiffs and members of the North Carolina Indirect-Purchaser Class

15 incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

16 Complaint.

17                  a.     Defendants agree to, and did in fact, act in restraint of trade or

18                           commerce by affecting, fixing, controlling and/or maintaining, at

19                           artificial and non-competitive levels, the prices at which NAND Flash

20                           Memory was sold, distributed or obtained in North Carolina and took

21                           efforts to conceal their agreements from Plaintiffs and the North

22                           Carolina Indirect-Purchaser Class.

23                  b.     The conduct of the Defendants described herein constitutes consumer-

24                           oriented deceptive acts or practices within the meaning of North

25                           Carolina law, which resulted in consumer injury and broad adverse

26                           impact on the public at large, and harmed the public interest of North

27

28                               

83

1      Carolina consumers in an honest marketplace in which economic

2      activity is conducted in a competitive manner.

3   c.  Defendants' price-fixing conspiracy could not have succeeded absent

4      deceptive conduct by Defendants to cover up their illegal acts.  Secrecy

5      was integral to the formation, implementation and maintenance of

6      Defendants' price-fixing conspiracy.  Defendants committed inherently

7      deceptive and self-concealing actions, of which Plaintiffs could not

8      possibly have been aware.  Defendants and their co-conspirators

9      publicly provided pre-textual and false justifications regarding their

10      price increases.  Defendants' public announcements concerning

11      changes in the price of NAND Flash Memory created the illusion of

12      competitive pricing controlled by market forces rather than

13      supracompetitive pricing driven by Defendants' illegal conspiracy.

14      Moreover, Defendants deceptively concealed their unlawful activities

15      by mutually agreeing not to divulge the existence of the conspiracy to

16      outsiders, conducting meetings and conversations in secret, confining

17      the plan to a small group of higher-level officials at each company and

18      avoiding the creation of documents which would reveal the antitrust

19      violations.

20   d.  Defendants' unlawful conduct had the following effects:  (1) NAND

21      Flash Memory price competition was restrained, suppressed, and

22      eliminated throughout North Carolina; (2) NAND Flash Memory prices

23      were raised, fixed, maintained, and stabilized at artificially high levels

24      throughout North Carolina; (3) Plaintiffs and members of the North

25      Carolina Indirect-Purchaser Class were deprived of free and open

26      competition; and (4) Plaintiffs and members of the North Carolina

27

28

84

1  Indirect-Purchaser Class paid supracompetitive, artificially inflated
2  prices for NAND Flash Memory.
3  e.  During the Class Period, Defendants' illegal conduct substantially
4  affected North Carolina commerce and consumers.
5  f.  During the Class Period, each of the Defendants named herein, directly,
6  or indirectly and through affiliates they dominated and controlled,
7  manufactured, sold and/or distributed NAND Flash Memory in North
8  Carolina.
9  g.  Plaintiffs and members of the North Carolina Indirect-Purchaser Class
10  seek actual damages for their injuries caused by these violations in an
11  amount to be determined at trial and are threatened with further injury.
12  Defendants have engaged in unfair competition or unfair or deceptive
13  acts or practices in violation of North Carolina Gen. Stat. §§75-1.1 *et*
14  *seq.* and, accordingly, Plaintiffs and all members of the North Carolina
15  Indirect-Purchaser Class seek all relief available under that statute.

### XII.  PRAYER FOR RELIEF

17  WHEREFORE, Plaintiffs pray:
18  A.  That the Court determine that the Sherman Act, state antitrust law, and
19  state consumer protection and unfair competition law claims alleged herein may be
20  maintained as class actions under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil
21  Procedure, as informed by the respective state class action laws.
22  B.  That the unlawful conduct, contract, conspiracy or combination alleged
23  herein be adjudged and decreed to be:
24  1.  A restraint of trade or commerce in violation of Section 1 of the
25  Sherman Act, as alleged in the First Claim for Relief;
26  2.  Acts of unjust enrichment as set forth in the Second Claim for Relief
27
28

85

1    herein;

2    3.    An unlawful combination, trust, agreement, understanding, and/or

3          concert of action in violation of the state antitrust laws identified in the

4          Third Claim for Relief herein; and

5    4.    Violations of the state consumer protection and unfair competition laws

6          identified in the Fourth Claim for Relief herein.

7    C.    That the Plaintiffs and the Classes alleged herein recover damages, to

8    the maximum extent allowed under such laws as provided by state antitrust laws, and that a

9    joint and several judgment in favor of Plaintiffs and the Classed be entered against the

10   Defendants in an amount to be trebled to the extent permitted by such laws;

11   D.    That the Plaintiffs and the Classes alleged herein recover damages, to

12   the maximum extent allowed by state consumer protection laws, except that New York

13   Plaintiffs and the New York Indirect-Purchaser Class do not seek in this action to have those

14   damages trebled pursuant to N.Y. Gen. Bus. Law Sec. 349(h).

15   E.    That Defendants, their affiliates, successors, transferees, assignees, and

16   the officers, directors, partners, agents, and employees thereof, and all other persons acting or

17   claiming to act on their behalf or in concert with them, be permanently enjoined and

18   restrained from in any manner continuing, maintaining, or renewing the conduct, contract,

19   conspiracy or combination alleged herein, or from entering into any other conspiracy alleged

20   herein, or from entering into any other contract, conspiracy or combination having a similar

21   purpose or effect, and from adopting or following any practice, plan, program, or device

22   having a similar purpose or effect;

23   F.    That the Court enter an order of divestiture requiring Defendants to

24   rescind and/or dissolve the cooperation agreements, joint ventures and/or cross-license

25   agreements alleged herein between and among them used to facilitate the conspiracy alleged

26   herein;

27

28

86

1        G.     That Plaintiffs and members of the Classes be awarded restitution,

2  including disgorgement of profits obtained by Defendants as a result of their acts of unfair

3  competition and acts of unjust enrichment;

4        H.     That Plaintiffs and members of the Classes be awarded pre- and post-

5  judgment interest as provided by law, and that such interest be awarded at the highest legal

6  rate from and after the date of service of the initial complaint in this action;

7        I.     That Plaintiffs and members of the Classes recover their costs of suit,

8  including a reasonable attorney's fee, as provided by law; and

9        J.     That Plaintiffs and members of the Classes have such other, further,

10  and different relief as the case may require and the Court may deem just and proper under the

11  circumstances.

12  Dated:  May 1, 2009               Respectfully submitted,

13                        */s/ Francis O. Scarpulla*

Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Christopher T. Micheletti (136446)
Judith A. Zahid (215418)
Qianwei Fu (242669)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA  94104
Telephone:     (415)639-0700
Facsimile:      (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

*/s/ Joseph W. Cotchett*

Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Nancy L. Fineman (124870)
Neil Swartzberg (215133)
Aron K. Liang (228936)
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:     (650) 697-6000
Facsimile:      (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

87

1

*Interim Lead Counsel for Indirect-Purchaser Class*

2

3      Derek G. Howard
       Gilmur Murray
       Scott Yundt
4      MURRAY & HOWARD LLP
       900 Larkspur Landing Circle
5      Suite 103
       Larkspur, CA 94939
6      Telephone: (415) 461-3200
       Facsimile: (415) 461-3208

7

8      Allan Steyer
       D. Scott Macrae
       Jill Manning
9      STEYER LOWENTHAL BOODROOKAS
       ALVAREZ & SMITH LLP
10     One California Street, Third Floor
       San Francisco, CA 94111
11     Tel: (415) 421-3400
       Fax: (415) 421-2234

12

13     Michael L. Roberts
       Richard Quintus
       ROBERTS LAW FIRM, PA
14     20 Rahling Circle
       P.O. Box 241790
15     Little Rock, AR 72223
       Tel: (501) 821-5575
16     Fax: (501) 821-4474

17     Dianne M. Nast
       RODANAST, P.C.
18     801 Estelle Drive
       Lancaster, PA 17601
19     Tel: (717) 892-3000
       Fax: (717) 892-1200

20

21     Daniel E. Gustafson
       Jason S. Kilene
22     Daniel C. Hedlund
       Sung-Yun K. Smith
       GUSTAFSON GLUEK PLLC
23     650 Northstar East
       608 Second Avenue South
24     Minneapolis, MN 55402
       Tel: (612) 333-8844
25     Fax: (612) 339-6622

26     Josef D. Cooper
       Tracy R. Kirkham
27     COOPER & KIRKHAM, P.C.

88

28     _____
       INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
       Master File No. C-07-00086-SBA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

357 Tehama Street, Second Floor
San Francisco, CA 94103
Tel: 415-788-3030
Fax: 415-882-7040

Mila Bartos
FINKELSTEIN THOMPSON LLP
1050 30th Street, N.W.
Washington, DC 20007
Tel: (202)337-8000
Fax: (202) 337-8090

Terry Gross
Adam Belsky
Monique Alonso
GROSS BELSKY ALONSO LLP
180 Montgomery Street, Suite 2200
San Francisco, CA 94104
Tel: (415) 544-0200
Fax: (415) 544-0201

Daniel C. Girard
Elizabeth C. Pritzker
Aaron M. Sheanin
GIRARD GIBBS LLP
601 California Street
Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846

Christopher Lovell
Keith Essenmacher
Craig Essenmacher
Chris McGrath
LOVELL STEWART HALEBIAN LLP
61 Broadway, Suite 501
New York, NY 10006
Tel: (212) 608-1900
Fax: (212) 719-4677

Jack W.Lee
Brad Yamauchi
B. Mark Fong
Hugo A. Zia
MINAMI TAMAKI LLP
360 Post Street
8th Floor
San Francisco, CA 94108
Tel: (415) 788-9000
Fax: (415) 398-3887

89

1

2    John M. Kelson
     LAW OFFICES OF JOHN M. KELSON
3    1999 Harrison Street, Suite 700
     Oakland, CA 94612
4    Tel: (510) 465-1326
     Fax: (510) 465-0871
5
     Michael J. Flannery
6    James Rosemergy
     CAREY & DANIS, LLC
7    8235 Forsyth Boulevard, Suite 1100
     St. Louis, MO 63105
8    Tel: (314) 725-7700
     Fax: (314) 721-0905
9
     James McManis
10   Marwa Elzankaly
     McMANIS FAULKNER
11   50 West San Fernando Street, 10th Floor
     San Jose, CA 95113
12   Tel: (408) 279-8700
     Fax: (408) 279-3244
13
     Daniel J. Mulligan
14   Larry W. Gabriel
     JENKINS MULLIGAN & GABRIEL, LLP
15   660 Market Street, 3rd Floor
     San Francisco, CA 94104
16   Tel: (415) 982-8500
     Fax: (415) 982-8515
17
     Daniel E. Birkhaeuser
18   Jennifer S. Rosenberg
     BRAMSON, PLUTZIK, MAHLER &
19   BIRKHAEUSER, LLP
     2125 Oak Grove Road, Suite 120
20   Walnut Creek, CA 94598
     Tel: (925) 945-0200
21   Fax: (925) 945-8792

22   David Boies, III
     Timothy D. Battin
23   Ian Otto
     Nathan Cihlar
24   STRAUS & BOIES, LLP
     4041 University Drive, 5th Floor
25   Fairfax, VA 22030
     Tel: (703) 764-8700
26   Fax: (703) 764-8704

27   Mark Schirmer
     STRAUS & BOIES, LLP
                                                                                    90
28   _____
     INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
     Master File No. C-07-00086-SBA

1  1661 International Drive, Suite 400
   Memphis, TN 38120
2  Tel: (901) 818-3146
   Fax: (901) 818-3147
3
   Jeffrey Bartos
4  GUERRIERI, EDMOND, CLAYMAN &
   BARTOS
5  1625 Massachusetts Ave, NW, Suite 700
   Washington, DC 20036
6  Tel: (202)624-7400
   Fax: (202) 624-7420
7
   Justin LaVan
8  LAMARCA & LANDRY, PC
   1820 NW 118th Street, Suite 200
9  Des Moines, IA 50325
   Tel: (515) 327-7469
10 Fax: (515) 225-8581
11 Angela Drake
   LOWTHER JOHNSON, LLC
12 019 St. Louis Street, 20th Floor
   Springfield, MO 65806
13 Tel: (417) 866-7777
   Fax: (417) 866-1752
14
   Andrew Nickelhoff
15 Marshal Widick
   SACHS WALDMAN, PC
16 1000 Farmer Street
   Detroit, MI 48226
17 Tel: (313) 965-3464
   Fax: (313) 965-4315
18
   David Freedman
19 Dana Grubesic
   FREEDMAN, BOYD, HOLLANDER,
20 GOLDBERG & IVES, PA
   20 First Plaza, Suite 700
21 Albuquerque, NM 87102
   Tel: (505) 842-9960
22 Fax: (505) 842-0761
23 James F. Wyatt, III
   WYATT & BLAKE, LLP
24 435 East Morehead Street
   Charlotte, NC 28202-2609
25 Tel: (704) 331-0767
   Fax: (704) 331-0773
26
   Eric Pickar
27 BANGS, MCCULLEN, BUTLER, FOYE &
                                                   91
28 ─────────────────────────────────────────────────
   INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
   Master File No. C-07-00086-SBA

1    SIMMONS, LLP
     333 West Boulevard, Suite 400
2    P.O. Box 2670
     Rapid City, SD 57709-2670
3    Tel: (605) 343-1040
     Fax: (605) 343-1503
4
     Michael G. Simon
5    Kevin M. Pearl
     M. Eric Frankovitch
6    FRANKOVITCH, ANETAKIS, COLANTONIO
     & SIMON
7    337 Penco Rd.
     Weirton, WV
8    Tel: (304) 723-4400
     Fax: (304) 723-5892
9
     Susan LaCava
10   SUSAN LACAVA, SC
     23 N. Pinckney St., Suite 300
11   Madison, WI 53703
     Tel: (608) 258-1335
12   Fax: (608) 258-1669
13   Jerry K. Cimmet
     ATTORNEY AT LAW
14   177 Bovet Road, Suite 600
     San Mateo, CA 94402
15   Tel: (650) 866-4700
     Fax: (650) 866-4770
16
     Natalie Finkelman Bennett
17   Jayne A. Goldstein, Esquire
     SHEPHERD, FINKELMAN, MILLER &
18   SHAH, LLC
     35 East State Street
19   Media, PA 19063
     Tel: 610-891-9880
20   Fax: 610-891-9883
21   Marvin Alan Miller
     MILLER LAW LLP
22   115 South LaSalle Street
     Suite 2910
23   Chicago, IL 60603
     Tel: (312) 332-3400
24   Fax: (312) 676-2676
25   Irwin B. Levin
     Scott D. Gilchrist
26   COHEN & MALAD, LLP
     One Indiana Square, Suite 1400
27   Indianapolis, IN 46204

                                                                        92
28   _____
     INDIRECT-PURCHASER PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
     Master File No. C-07-00086-SBA

1  Tel: 317-636-6481
   Fax: 317-636-2593
2
   Edward A. Wallace
3  WEXLER TORISEVA WALLACE
   55 West Monroe, Suite 3300
4  Chicago, IL 60603
   Tel: 312-346-2222
5
   Joshua A. Jones
6  John Alystock
   AYLSTOCK, WITKIN, KREIS, OVERHOLTZ
7  803 N. Palafox Street
   Pensacola, FL 32501
8  Tel: 850-916-7450 or 1-877-810-4808
   Fax: 850-916-7449
9
   James Andrew Quadra
10 MOSCONE EMBLIDGE & QUADRA LLP
   Mills Tower
11 220 Montgomery Street, Suite 2100
   San Francisco, CA 94104
12 Tel: (415) 362-3599
   Fax: (415) 362-2006
13
   Joseph Richard Saveri
14 Eric B. Fastiff
   Michelle Jackson
15 Nimish Desai
   LIEFF, CABRASER, HEIMAN & BERNSTEIN
16 275 Battery Street
   30th Floor
17 San Francisco, CA 94111-3339
   Tel: (415) 956-1000
18 Fax: (415) 956-1008
19
   Shpetim Ademi
20 ADEMI & O'REILLY LLP
   3620 East Layton Avenue
21 Cudahy, WI 53110
   Tel: (414) 482-8000
22 Fax: (414) 482-8001
23 Robert K. Shelquist
   W. Joseph Bruckner
24 LOCKRIDGE GRINDAL NAUEN PLLP
   100 Washington Avenue South, Suite 2200
25 Minneapolis, MN 55401
   Tel: 612-339-6900
26 Fax: 612-399-0981
27 Michael McShane
   AUDET & PARTNERS, LLP

28
                                                                    93

221 Main Street, Suite 1460
San Francisco, CA 94105
Tel: 415-568-2555
Fax: 415-568-2556
Email: mmcshane@audetlaw.com

Reginald Von Terrell
THE TERRELL LAW GROUP
223 25th Street
Richmond, CA 94804
Tel: (510) 237-9700
Fax: (510) 237-4616

C. Donald Amamgbo
AMAMGBO & ASSOCIATES, APC
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Tel: (510) 615-6000
Fax: (510) 615-6025

Judith Blackwell
BLACKWELL & BLACKWELL
584 Valle Vista Avenue
Oakland, Ca 94610
Tel: (510) 689-8888
Fax: (510) 835-2848

Lawrence Dumzo Nwajei
LAW OFFICES OF NWAJEI & COMPANY
4221 Wilshire Blvd., Suite 392
Los Angeles, CA 90010
Tel: (323) 549-0201
Fax: (323) 549-0211

Lingel H. Winters, Esq.
LAW OFFICES OF LINGEL H. WINTERS
One Maritime Plaza, Suite 400
San Francisco, CA 94111
Tel: 415-398-2941
Fax: 415-393-9887

94

1

### XIII.   JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a

2

trial by jury for all issues so triable.

3

4

Dated:  May 1, 2009                                    _____/s/ Francis O. Scarpulla_____

5                                                                              Francis O. Scarpulla (41059)
                                                                             Craig C. Corbitt (83251)
6                                                                              Christopher T. Micheletti (136446)
                                                                             Judith A. Zahid (215418)
7                                                                              Qianwei Fu (242669)
                                                                             ZELLE HOFMANN VOELBEL & MASON
8                                                                              LLP
                                                                             44 Montgomery Street, Suite 3400
9                                                                              San Francisco, CA  94104
                                                                             Telephone:    (415)639-0700
10                                                                            Facsimile:     (415) 693-0770
                                                                             fscarpulla@zelle.com
11                                                                            ccorbitt@zelle.com

12                                                                            _____/s/ Joseph W. Cotchett_____

13                                                                            Joseph W. Cotchett (36324)
                                                                             Steven N. Williams (175489)
14                                                                            Nancy L. Fineman (124870)
                                                                             Neil Swartzberg (215133)
15                                                                            Aron K. Liang (228936)
                                                                             COTCHETT, PITRE & MCCARTHY
16                                                                            San Francisco Airport Office Center
                                                                             840 Malcolm Road, Suite 200
17                                                                            Burlingame, CA 94010
                                                                             Telephone:    (650) 697-6000
18                                                                            Facsimile:     (650) 697-0577
                                                                             jcotchett@cpmlegal.com
19                                                                            swilliams@cpmlegal.com

20                                                                            *Interim Lead Counsel for Indirect-Purchaser*
                                                                             *Class*

21

22

23

24

25

26

27
                                                                                                          95
28

1

## **ATTESTATION OF FILING**

2          Pursuant to N.D. Cal. General Order No. 45, section 45 X(B), I, Neil Swartzberg,

3 hereby attest that concurrence in the filing of this document has been properly obtained by

4 counsel whose conformed signatures appear above.

5

6                                        **COTCHETT, PITRE & MCCARTHY**

7                                        By: */s/ Neil Swartzberg*
                                                Neil Swartzberg
8
                                        *Interim Lead Counsel for Indirect-Purchaser*
9                                        *Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                                                                    96
28