UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE FLASH MEMORY ANTITRUST
LITIGATION

This Document Relates to Indirect
Purchase Action.

Case No:  C 07-0086 SBA

**ORDER DENYING INDIRECT-
PURCHASER PLAINTIFFS' MOTION
FOR RECONSIDERATION**

Dkt. 715

The parties are presently before the Court on the Indirect-Purchaser Plaintiffs'
Motion for Leave to File Motion for Reconsideration of Class Certification Order.  Dkt.
715.  Having read and considered the papers filed in connection with this matter and being
fully informed, the Court hereby GRANTS Plaintiffs leave to file their motion and DENIES
the motion for reconsideration on the merits.

I.      **BACKGROUND**

The parties are familiar with the facts of this case, which will not be repeated in
detail.  Plaintiffs aver that Defendants—manufacturers of NAND flash memory—
conspired to fix prices for NAND flash memory chips.  Defendants allegedly sold their
chips at artificially-inflated prices to direct purchasers, which, in turn, incorporated the
chips into their products.  Examples of such products include flash memory drives, digital
media players such as the iPod, digital cameras and gaming devices, among others.
Plaintiffs allege that direct-purchasers passed along the overcharge to product
manufacturers, which then passed such increased cost to consumers, i.e., the indirect
purchasers.

Competing law firms purporting to represent the interests of various direct and indirect purchasers filed twenty-four separate lawsuits against Defendants, vying for the position of lead counsel. After the Court related and consolidated the various cases, direct-purchaser plaintiffs and indirect-purchaser plaintiffs each filed separate complaints, Dkt. 310, 311, in response to which Defendants filed motions to dismiss. Dkt. 370-374, 376, 382. The Court denied Defendants' motion to dismiss as to the indirect-purchasers, and granted in part and denied in part the motion with respect to the direct-purchaser action.[1] In re Flash Memory Antitrust Litig., 643 F.Supp.2d 1133 (N.D. Cal. 2009).

Following the Court's ruling on Defendants' motion to dismiss, indirect-purchaser plaintiffs filed a motion for class certification in which they moved to certify: (1) a nationwide class for injunctive relief under Rule 23(b)(2); and (2) twenty statewide classes for damages and/or equitable relief under Rules 23(b)(3) and/or 23(b)(2). On March 31, 2010, the Court denied Plaintiffs' motion. 3/31/10 Order, Dkt. 707 (sealed order); 6/9/10 Order, Dkt. 724 (public order). The Court denied certification under Rule 23(b)(2) on the grounds that (1) Plaintiff had failed to show a threat of continuing or future injury, and (2) their claim for monetary relief predominated over their request for injunctive and/or declaratory relief. Id. at 9-10.

The Court also rejected Plaintiffs' request to certify statewide classes for damages under Rule 23(b)(3), which authorizes class certification where "the questions of law or fact common to class members predominate" over individualized issues. In reaching that conclusion, the Court explained that the salient question presented was to what extent common evidence could be presented to establish injury to the class. Id. at 11. Since the Plaintiffs are indirect-purchasers, the answer to that inquiry involved a two-step process. Plaintiffs first had to establish that common evidence could be presented to show that

---

[1] It was later revealed that the class representative for the direct-purchasers, Timothy Chanda, had, in fact, never made any direct purchases of NAND flash memory. As a result, the Court concluded that Mr. Chanda lacked standing to sue. See In re Flash Memory Antitrust Litig., C 07-0086 SBA, 2010 WL 2465329 (N.D. Cal. June 20, 2010). The parties subsequently stipulated to the dismissal of the direct-purchaser action. Dkt. 730.

direct-purchasers paid artificially-inflated prices for flash memory.  Next, Plaintiffs had to demonstrate that common evidence would show that the direct purchasers passed-through some or all of the inflated price to indirect purchasers.  Id. at 11-12.

Plaintiffs proffered the declaration of Dr. Janet Netz, who opined that Plaintiffs could show impact (or injury) to the class on a "common, formulaic basis," by virtue of Defendants' use of price lists, centralized decision-making authority and MFC (most-favored customer) clauses.  Pls.' Mot. for Class Cert. at 7-8.  Plaintiffs also relied on Dr. Netz's regression analysis which was offered to explain the variations in individual transaction prices for flash memory.   Id.; see also 6/9/10 Order at 12-16.  After carefully reviewing the reports from Dr. Netz and Defendants' experts, Dr. Michelle Burtis and Dr. Michael Keeley, as well as the arguments presented in the parties' respective briefs, the Court concluded that it was unlikely that antitrust impact could be established on a common, formulaic basis.  Id. at 19.  Alternatively, the Court found that even if Plaintiffs had presented compelling arguments for certification under Rule 23(b)(3) or (b)(2), class certification was not warranted given Plaintiffs' inability to identify an ascertainable class. Id. at 22.

Plaintiffs now seek leave to file a motion for reconsideration, Dkt. 715, based principally on the Ninth Circuit's en banc decision in Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010) (en banc), cert. granted, 131 S.Ct. 795 (Dec. 6, 2010), which was published shortly after the Court issued its order denying Plaintiffs' motion for class certification.  According to Plaintiffs, the Court's ruling is erroneous under Dukes ostensibly because the Court:  (1) credited the opinions of Defendants' experts over those of Plaintiffs' experts, and in doing so, improperly made findings on the merits of the case; and (2) applied a "subjective intent" standard in denying certification under Rule 23(b)(2) which was subsequently rejected in Dukes.  Plaintiffs also assert that the Court should not have considered the ascertainability of the class at the class certification stage.

The Court set a briefing schedule and directed Defendants to file a response to Plaintiffs' motion for leave to file a motion for reconsideration.  In their opposition,

Defendants refute Plaintiffs' assertion that <u>Dukes</u> altered the standards applicable to class certification.  They point out that the Court's analysis of Plaintiffs' motion for class certification, including its assessment of the expert opinions presented, is consistent with the legal standard affirmed in <u>Dukes</u>.  With respect to the issue of subjective intent, Defendants highlight the fact that the Court's denial of certification under Rule 23(b)(2) rested upon two, alternative grounds, one of which Plaintiffs have failed to address.  Finally, Defendants contend that Plaintiffs' arguments regarding ascertainability are the same as those which the Court previously considered and rejected in its prior order and otherwise are uncompelling.   The matter is fully briefed and ripe for decision.[2]

## II.      <u>LEGAL STANDARD</u>

A district court has the discretion to reconsider a prior order.  <u>Sch. Dist. No. 1J v. ACandS, Inc., Multnomah Cnty., Or.</u>, 5 F.3d 1255, 1262 (9th Cir. 1993).  "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  <u>389 Orange Street Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir. 1999).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  <u>Kona Enterprises v. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000).

## III.     <u>DISCUSSION</u>

### A.      CHANGE IN CONTROLLING LAW

#### 1.      Rule 23(b)(3)

In <u>Dukes</u>, female employees brought a gender discrimination action under Title VII of the Civil Rights Act of 1964, claiming that Wal-Mart discriminated against them in terms of pay and promotions.  Plaintiffs moved to certify a nationwide class comprised of any woman employed at any domestic Wal-Mart store "who may have been or may be

---

[2] Plaintiffs' motion for reconsideration is attached as Exhibit A to their motion for leave to file a motion for reconsideration.  Since Defendants' response substantively addresses the motion for reconsideration, the Court grants Plaintiffs' request for leave to file a motion for reconsideration and considers such motion on the merits.

subjected to Wal-Mart's challenged pay and management track promotions and policies." <u>Dukes</u>, 603 F.3d at 578.  The district court partially granted plaintiffs' motion and certified a class under Rule 23(b)(2) "encompassing all women employed by Wal-Mart at any time after December 26, 1998, and encompassing all Plaintiffs' claims for injunctive relief, declaratory relief, and back pay, while creating a separate opt-out class encompassing the same employees for punitive damages." <u>Id.</u> at 577.  The Ninth Circuit en banc affirmed the district court's certification ruling, but remanded the matter as to issues that are not relevant to the instant proceeding.  <u>Id.</u>  In doing so, the court provided an extensive discussion "clarifying" the standards for reviewing class certification motions.  <u>Id.</u> at 590.

Plaintiffs contend that <u>Dukes</u> constitutes a material change in the law with respect to the standards governing motions for class certification under Rule 23(b)(3), and that the Court's analysis of their motion, particularly with respect to its consideration of the parties' expert opinions, was erroneous.  According to Plaintiffs, <u>Dukes</u> purportedly holds that "the district court must steer clear of deciding the case or critical issues in the case at the preliminary certification stage[.]"  Pls.' Mot. for Recons. at 4.  Further, Plaintiffs assert that under <u>Dukes</u>, the court is forbidden from weighing competing expert opinions, and is strictly limited to determining "whether the plaintiff's expert analysis was itself sufficient to support plaintiff's theory as to whether the Rule 23 requirement is met (e.g. there being common issues)[.]"  <u>Id.</u>

Despite Plaintiffs' suggestions to the contrary, <u>Dukes</u> does not constitute a material change in the law regarding class certification motions.  Indeed, the court emphasized that "the explanation we provide today is not a new standard at all."  <u>Dukes</u>, 603 F.3d at 590. To the contrary, the court unequivocally stated that the purpose of its opinion is to provide "*clarification* of the proper standard governing a district court in considering a Rule 23 motion for class certification."  <u>Id.</u> (emphasis added).  In particular, the court believed that such clarification was in order in light of decisions by a "small number of district courts in this circuit" which have misinterpreted passages in <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974) and <u>Blackie v. Barrack</u>, 524 F.2d 891, 897 (9th Cir. 1975) as prohibiting

district courts from engaging in *any* analysis relating to the merits of the case.  <u>Dukes</u>, 603 F.3d at 590, 582, 589.  To that end, the court *reiterated and clarified* that "when considering class certification under Rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and *this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims*."  <u>Id.</u> at 594 (emphasis added).  The court reaffirmed that not only is an "inquiry overlapping with the merits [] permissible," it is "often required, under Rule 23."  <u>Id.</u> at 586.

Plaintiffs assert that the Court's class certification ruling contravenes <u>Dukes</u>, on the theory that the Court supposedly conducted a "full-blown merits analysis and improperly relied on Defendants' expert reports, rather than properly assessing Plaintiffs' expert reports and Plaintiffs' proposed ability to use predominantly common proof of impact." Pls.' Mot. at 6.  This contention is meritless.  As an initial matter, Plaintiffs never identify any portions of the Court's order or explain how the ruling constitutes a "full blown merits analysis"—nor could they legitimately do so.  "To state a claim under Section 1 [of the Sherman Act], a plaintiff must allege facts that, if true, will prove: (1) the existence of a conspiracy, (2) intention on the part of the co-conspirators to restrain trade, and (3) actual injury to competition."  <u>Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.</u>, 611 F.3d 495, 501-502 (9th Cir. 2010).  The Court's class certification order made no findings regarding any of these elements nor does it opine whether Plaintiffs ultimately would succeed on their claims.  Rather, consistent with <u>Dukes</u>, the Court considered all of the evidence presented, including the parties' expert reports, to assess Plaintiffs' contention that they would be able to prove their case based on a "common, formulaic basis."  <u>See</u> Pls.' Mot. for Class. Cert. at 8.

Plaintiffs' ancillary assertion that the Court relied exclusively on the reports of Defendants' experts while "dismissing out of hand" the reports of their experts is equally

misplaced.   See Pls.' Mot. for Recons. at 5.[3]   As support, Plaintiffs posit that Dukes forbids
a district court from making credibility determinations or otherwise weighing statistical
evidence presented by the parties' respective experts.  Id. at 4-6 (citing Dukes, 591-92).
Dukes made no such pronouncement.  Rather, the Ninth Circuit noted that disparate impact
employment cases present "unique difficulties" in analyzing commonality under Rule 23(a)
because the *same* statistical evidence often is used to show both the merits of plaintiff's
claims as well as "whether a plaintiff has satisfied the commonality requirement."  Dukes,
603 F.3d at 592 (internal quotations and citation omitted).  Thus, in those particular
circumstances, Dukes instructs that the district court should be mindful of avoiding making
a credibility assessment of statistical evidence in cases where the parties' disagreement over
such evidence "is relevant only to the merits of plaintiffs' claim—whether plaintiffs
actually suffered disparate treatment—and not to whether plaintiffs have asserted common
questions of fact or law[.]"  Id.  In other words, where the statistical evidence presented is
pertinent to the merits of the case and the issue of commonality, a district court must be
particularly careful not to stray into the merits and, in effect, deny certification on the
ground that no discrimination occurred.  Id.

---

[3] Plaintiffs' assertion that the Court dismissed "out of hand" the opinions of Dr. Netz
is grossly inaccurate.  As set forth in detail in its class certification order, the Court
considered the bases of Dr. Netz's contention that the impact of Defendants' allegedly
anticompetitive conduct could be shown on a common, formulaic basis.  The Court made
its determination that Dr. Netz's opinions were uncompelling only after considering all of
the evidence proffered by the parties.  The "findings" identified by Plaintiffs relating to
negotiated pricing, market power and MFC clauses, see Pls.' Mot. for Recons. at 6, are not
findings on the merits or Plaintiffs' likelihood of succeeding on their claims.  The Court's
discussion of those issues is based specifically on the arguments presented by the parties.
But even if these issues overlapped with the merits, Dukes makes clear that the district
court is obligated to consider such issues to the extent that they relate to whether Plaintiffs
have met their burden of demonstrating the propriety of certification under Rule 23.

Unlike <u>Dukes</u>, the instant action is not an employment discrimination action based on disparate impact nor is it analogous to one. Nor did the dispute at the class certification stage concern *commonality* under Rule 23(a). Rather, the issue before the Court was whether Plaintiffs satisfied the *predominance* requirement under Rule 23(b)(3). That distinction—completely ignored by Plaintiffs—is critical. The majority in <u>Dukes</u> made a point of distinguishing between the "different showings" the plaintiff is required to make with respect to commonality and predominance, and the distinct tasks the district court must make in assessing each. <u>Dukes</u>, 603 F.3d at 593. Unlike the commonality requirement, predominance under Rule 23(b)(3) may require the district court to make "more precise factual determinations" and "to formulate '*some prediction as to how specific issues will play out* in order to determine whether common or individual issues predominate in a given case.'" <u>Id.</u> (quoting in part <u>Brown v. Am. Honda (In re New Motor Vehicles Canadian Export Antitrust Litig.)</u>, 522 F.3d 6, 24 (1st Cir. 2008)) (emphasis added). The <u>Dukes</u> court concluded by noting that "[t]he lesson for future district courts is that, in a given case, the text of Rule 23(a), as compared to Rule 23(b), may require them to determine more or different facts (*typically more under Rule 23(b)(3)*) to determine whether the plaintiffs have met their Rule 23 burden." <u>Id.</u> at 594 (emphasis added).

In its class certification order, the Court's analysis focused solely on the question of whether Plaintiffs met their burden under Rule 23(b)(3); namely, whether common proof could be used to demonstrate that members of the proposed class of indirect purchasers suffered antitrust impact (or injury) from the alleged conspiracy to artificially inflate the cost of flash memory. The Court carefully considered Dr. Netz's claims that the impact to the putative class could be shown generally by Defendants' use of price lists, centralized pricing authority, MFC clauses, and a hedonic regression analysis. The Court also considered the reports prepared by Defendants' experts, Drs. Burtis and Keeley. 6/9/10 Order at 12-19. Ultimately, the Court concluded that Dr. Netz's opinions lacked foundation and were uncompelling, and that Plaintiffs had thus failed to meet their burden under Rule 23(b)(3). The Court's analysis of the competing expert reports comports with <u>Dukes</u>,

which recognizes the district court's obligation to conduct a "'rigorous analysis' of the conflicting evidence." Dukes, 603 F.3d at 600 n.20. That evidence is *not* limited to evidence proffered by Plaintiffs, but includes "*all* the evidence presented" on the issue of class certification. Id. at 608 (emphasis added). While the Court's determinations in its class certification order may have touched upon matters relating to the merits—which is entirely permissible under Dukes—it made no findings as to which parties' evidence is more persuasive on the issues of liability.[4]

## 2.   Rule 23(b)(2)

Next, Plaintiffs argue that the Court should reconsider its decision to deny Plaintiffs' motion for certification under Rule 23(b)(2) on the ground that "this Court relied on the now-discredited 'subjective intent' standard to deny certification...." Pls.' Mot. for Recons. at 11. Rule 23 provides that: "A class action may be maintained if Rule 23(a) is satisfied *and* if: [¶] … the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2) (emphasis added). The Advisory Committee Notes to Rule 23 instruct that certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed.R.Civ.P. 23 Advisory Committee Note (1966).

Prior to Dukes, the plaintiff's subjective intent in bringing suit was determinative of whether monetary relief "predominates" over declaratory and injunctive relief for purposes of Rule 23(b)(2). See Molski v. Gleich, 318 F.3d 937, 950 (9th Cir. 2003). Finding the

---

[4] It is unclear how the Court's evaluation of the parties' expert reports constitutes a decision on the merits of the action when the experts explicitly stated that they were not offering such an opinion. Indeed, Dr. Netz prepared her analysis based "on the assumption that liability will be proven" and framed her report as being responsive to the matter of "whether Defendants' alleged conduct had common or class-wide impact on the members of the proposed class and whether computation of the damages suffered by the class members as a result of Defendants' alleged conduct is susceptible to common proof on a formulaic basis." Netz Decl. in Supp. of  Indirect-Purchaser Pls.' Mot. for Class Cert. at 1. Defendants' experts likewise addressed the same issues. See Burtis Decl. in Supp. of Defs.' Jt. Opp'n to Indirect Purchaser Pls.' Mot. for Class Cert. ¶ 4; Keeley Decl. in Supp. of Defs.' Jt. Opp'n to Indirect Purchaser Pls.' Mot. for Class Cert. ¶ 1.

subjective intent standard to be an "incomplete method" for analyzing predominance, the Ninth Circuit in <u>Dukes</u> held that "[t]o the extent <u>Molski</u> required the district court to inquire *only* into the intent of the plaintiffs and focus primarily on determining whether reasonable plaintiffs would bring suit to obtain injunctive or declaratory relief even in the absence of a possible monetary recovery, [] it is overruled." 603 F.3d at 617 (emphasis added). Rather, in considering whether certification under Rule 23(b)(2) is warranted, the district court's inquiry should focus more broadly on objective, case-specific considerations:

> [W]e adopt instead the standard that Rule 23(b)(2)'s drafters straightforwardly indicated: Rule 23(b)(2) certification is not appropriate where monetary relief is "predominant" over injunctive relief or declaratory relief. *To determine whether monetary relief predominates, a district court should consider, on a case-by-case basis, the objective "effect of the relief sought" on the litigation* []. Factors such as whether the monetary relief sought determines the key procedures that will be used, whether it introduces new and significant legal and factual issues, whether it requires individualized hearings, and whether its size and nature-as measured by recovery per class member—raise particular due process and manageability concerns would all be relevant, though no single factor would be determinative.

<u>Id.</u> (emphasis added, citation omitted).

The Ninth Circuit's shift away from <u>Molski</u>'s subjective intent approach does not present viable grounds for reconsideration. First, Plaintiffs ignore that the Court's ruling rested upon two independent grounds; namely that: (1) Plaintiffs "failed to show threat of continuing or future injury"; and (2) "Plaintiffs' primary intent in this litigation is to recover damages for past purchases." 6/9/10 Order at 10. Notably, Plaintiffs do not mention, let alone address, the Court's initial finding that Plaintiffs failed to show any threat of continuing or future injury. As such, even if Plaintiffs were correct in their analysis of <u>Dukes</u>, the Court's ruling would remain unchanged.

Moreover, <u>Dukes</u> does not undermine the validity of the Court's assessment of whether Plaintiffs' claim for injunctive relief is sufficiently predominant for purposes of Rule 23(b)(2). While referencing Plaintiffs' "intent" in seeking damages, the Court also considered objective indicia to determine whether monetary relief is predominant over

injunctive relief or declaratory relief.  See 6/9/10 Order at 10 ("Based on the pleadings and record presented, it is clear that Plaintiffs principally are seeking damages for past conduct.").[5]  In their Complaint, Plaintiffs clearly state that the crux of their claims is that direct purchasers paid artificially-inflated prices for flash memory, and that those alleged overcharges were passed along to indirect purchasers.  See, e.g., Compl. ¶ 163.[6]  These claims seek monetary restitution for the putative class based on the alleged overpayments for flash memory.  Id. Prayer for Relief ¶¶ C, D, F, H.

Because the restitution amount is dependent on the particular purchases made and amounts paid by indirect purchasers, monetary relief will dictate the key procedures utilized in this case and require individualized inquiries and hearings.  This is not a straightforward case in which a single entity overcharged for a particular product purchased by a homogeneous group of consumers.  To the contrary, this case involves a multitude of manufacturers of different types of NAND flash memory sold at different times at different prices to different intermediaries and product manufacturers which, in turn, placed such memory in a number of products (such as iPods, mobile telephones, computers and digital cameras, to name but a few) sold to different retailers and resellers at different times and prices—and ultimately to a plethora of end users.  Correspondingly, each class member's recovery would be dependent on a multiple levels of factual inquiry, such as the identity of the flash memory manufacturer, when the memory was sold to the direct purchaser, the amount paid by each direct purchaser and the amount the direct purchaser was overcharged,

---

[5] The Court may properly consult the pleadings in assessing whether a claim for monetary relief is predominant over a claim for injunctive or declaratory relief.  See Wang v. Chinese Daily News, Inc., 623 F.3d 743, 754-55 (9th Cir. 2010) ("it was appropriate for the court to focus on the complaint to determine the relationship between claims for monetary and injunctive relief.").

[6] Paragraph 163, which apparently summarizes the preceding 162 paragraphs comprising the charging allegations of the Complaint, states:  "Plaintiffs and other indirect-purchasers have been forced to pay supracompetitive prices for the stand-alone NAND Flash Memory products and for products in which NAND Flash Memory is a substantial component.  These inflated prices have been passed on to them by direct-purchaser manufacturers, distributors, and retailers.  Those overcharges have unjustly enriched Defendants."

which of the multitude of finished products into which the memory was incorporated, the amount of the overcharge passed-through to the indirect purchaser, and so on.  Although the Complaint also seeks to enjoin Defendants from engaging in anti-competitive conspiratorial conduct, see Compl. at 106, it is readily apparent that Plaintiffs' claims for monetary relief remain predominant.

**B.   CLEAR ERROR**

As an entirely separate basis for denying Plaintiffs' motion for class certification, the Court found that Plaintiffs had failed to meet their obligation of identifying an ascertainable class.  6/9/10 Order at 22-24.  In their motion for reconsideration, Plaintiffs accuse the Court of "improperly advancing" the issue of ascertainability to the class certification stage, claiming that "requiring class member identification *at the class certification stage* is not appropriate."  See Pls.' Mot. for Recons. at 11-12.  However, this essentially is the same argument that Plaintiffs made in their reply brief in support of their motion for class certification.  Compare Pls.' Mot. for Recons. at 11-12 with Pls.' Reply in Supp. of Mot. for Class Cert. at 15.  The Civil Local Rules expressly prohibit a party from seeking reconsideration by repeating arguments previously presented to the Court.  Civ. L.R. 7-9(c).

The above notwithstanding, Plaintiffs have failed to persuade the Court to reconsider its ruling on the issue of ascertainability.  As discussed in the Court's class certification order, numerous courts have concluded that the existence of an identifiable class is a prerequisite to class certification.  See 6/9/10 Order at 22-23.  Plaintiffs address none of these cases in their motion for reconsideration.  Instead, Plaintiffs cite decisions that are wholly inapposite.  Pls.' Mot. for Recons. at 12.  In Kohen v. Pac. Inv. Mgt. Co., LLC, 571 F.3d 672 (7th Cir. 2009), the Seventh Circuit rejected the defendant's contention that, *for purposes of standing*, the district judge was required to determine which class members had suffered damages.  Id. at 676.  Kohen did not address the plaintiffs' burden of demonstrating that an identifiable and ascertainable class exists.

Plaintiffs' citation to Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125 (S.D.N.Y. 2003) fares no better.  In that case, the district court simply noted that the burdens imposed

by having to identify class members did not ipso facto mean that the class was not ascertainable. Id. at 136. The court did not discuss *when* the issue of ascertaining the class should be made. In fact, Dunnigan expressly recognizes that ascertainability is an "implied requirement" for class certification and analyzed the issue in the context of denying the plaintiff's motion for class certification. In short, neither Dunnigan nor Kohen supports Plaintiffs' contention that the Court erred in addressing the question of ascertainability at the class certification stage. Accordingly, the Court finds that Plaintiffs have failed to present any plausible basis for the Court to reconsider its conclusion that Plaintiffs have failed to identify an ascertainable class.

IV.    **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    Plaintiffs' Motion for Leave to Seek Reconsideration of Class Certification Order is GRANTED.

2.    Plaintiffs' Motion for Reconsideration is DENIED.

3.    This Order terminates Docket 715.

IT IS SO ORDERED.

Dated:  March 31, 2011

SAUNDRA BROWN ARMSTRONG
United States District Judge